ABRAHAM DAVIS, Respondent, *v.* THE GUARDIAN ASSURANCE COMPANY, Appellant.

*Fire insurance policy — provision as to the determination of the loss by appraisers — effect of the fraud of an appraiser — discrepancy between the amount claimed and the amount awarded as evidence of fraud by the insured — when a verdict will not be set aside — submission to a jury of specific questions, discretionary — Code of Civil Procedure, § 1187.*

Upon the trial of an action brought upon a fire insurance policy to recover the damages caused to the insured property by fire, it was shown that after the fire, pursuant to the terms of the policy, two appraisers, one appointed by the insurer and one by the insured, and an umpire selected by them, commenced the appraisal of the loss. The appraiser selected by the insured testified that on the last day that he acted as appraiser, he and Hinrichs, the appraiser selected by the insurer, went to a saloon and drank together, and that "Mr. Hinrichs said to me — told me that we get through easy with this job — the adjuster has got places to appraise, some in the country, and we will go there, in Newton, and we will go there; I answered, I will see how the time will be with me; if I can spare it, that is all." Hinrichs denied that he made any such statement to the appraiser selected by the insured.

The plaintiff testified that the fact that this conversation had occurred was brought to his knowledge, and that thereupon and for that reason, and because he was dissatisfied with the damages agreed upon for the articles appraised, he refused to allow the appraisers to continue the appraisal.

The court instructed the jury that, if they found that such a proposition was made, it was a sufficient justification for the plaintiff to refuse to permit the appraisers to continue the appraisement.

The policy of insurance contained, among others, the following clauses:

"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage; and failing to agree, shall submit their differences to the umpire, and the award in writing of any two shall determine the amount of such loss. * * *

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements."

*Held*, that the instruction was proper; that the insured was under no obligation to permit his damages to be appraised by an appraiser who would make such a proposition or by one who would listen to it without disclosing the fact;

That if the jury found that an improper proposal was made by the insurer's appraiser and new appraisers were not appointed, the fact that no appraisement was made, pursuant to the requirements of the policy, was not a defense to the action brought thereon.

In an action brought on a fire insurance policy to recover the amount of a loss, the fact that there exists a considerable discrepancy between the amount claimed in the proofs of loss to have been lost through the burning of property covered by a fire insurance policy and the amount awarded to the owner thereof, is evidence upon the question as to the fraudulent overvaluation of the loss upon the part of the insured, but it does not ordinarily amount to proof of a fraudulent overvaluation, and whether the difference between the amount claimed and the amount awarded is so great as to justify the court in setting aside the verdict depends upon the facts in each case.

Upon the trial of an action brought to recover the amount of loss sustained by the burning of property covered by a fire insurance policy, the plaintiff asserted in his proofs of loss .that the damages caused by the fire amounted to $2,154.15, while the amount awarded by the jury was $1,000. The property lost and damaged consisted wholly of household furniture, clothing, stores and supplies.

The insurance policy contained the following clause :

"This entire policy shall be void  *  *  *  in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

*Held,* that the General Term would not be justified, as a matter of law, in setting aside the verdict and granting a new trial because the insured claimed that the damages sustained were a little more than twice the amount awarded to him by the jury.

Whether a trial court will or will not submit specific questions to the jury pursuant to section 1187 of the Code of Civil Procedure rests in its sound discretion, and its determination will not be reviewed upon appeal unless it appears that its discretion has been abused.

APPEAL by the defendant, The Guardian Assurance Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 18th day of December, 1893, upon the verdict of a jury rendered after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 20th day of December, 1893, denying the defendant's motion for a new trial made upon the minutes.

This action was begun March 4, 1892, to recover from an insurer damages caused by fire. The defendant by a written policy insured the plaintiff from June 27, 1891, to June 27, 1894, against loss or damage by fire, not exceeding $1,500, on his household furniture, clothing, stores and supplies situate at No. 141 First avenue in the city of New York, where the plaintiff and his family resided. Between six and ten o'clock in the evening of November 3, 1891, a

fire occurred in the premises, damaging some and destroying some of the property insured. November 19, 1891, the plaintiff verified and delivered to the defendant proofs of loss in which he stated that the damage caused to his property by the fire amounted to $2,154.15. Annexed to and forming a part of the proofs was a schedule of the property lost and insured, which consisted of about 250 items. The policy contains the following provisions:

" This entire policy shall be void  *  *  *  in case of any fraud or false .swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.  *  *  *

" In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire ; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage ; and failing to agree, shall submit their differences to the umpire, and the award in writing of any two shall determine the amount of such loss ; the parties thereto shall pay the appraiser respectively selected by them, and shall bear equally the expenses of the appraisal and umpire.  *  *  *

" No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements."

November 23, 1891, the parties executed an agreement submitting to appraisers the question of the amount of damages caused by the fire to the plaintiff's property. Marks Levy was selected by the plaintiff and Carl E. L. Hinrichs by the defendant. November twenty-fifth the appraisers took and subscribed the usual oath and appointed, in writing, Louis Alexander as umpire. On Friday, November twenty-seventh, the appraisers met and began their work, and after appraising a number of articles they adjourned until Sunday, November twenty-ninth, when they again met and resumed work. The plaintiff on this occasion expressed dissatisfaction with the conduct of the appraisers, and Levy withdrew and refused to continue to. act as appraiser, and December seventh executed a written resignation addressed to the defendant. The appraiser

selected by the defendant went on with the umpire against the plaintiff's objection and completed the appraisement, assessing the dam ages at $420.70.

*Benno Loewy,* for the appellant.

*Samuel Greenbaum,* for the respondent.

FOLLETT, J.:

Only two defenses are set up in the answer : (1) That the plaintiff refused to permit the damages to be appraised, pursuant to the terms of the policy, and (2) that the plaintiff falsely and fraudulently overstated in his verified proofs of loss the value of the property destroyed and injured, and the damage to the property injured. On the trial, no objection being interposed that such a defense was not pleaded, the defendant gave evidence which, it insisted, required the jury to find that the plaintiff fraudulently set, or caused to be set, the fire which occasioned the damages.

On the trial, Marks Levy, the appraiser selected by the plaintiff, testified that on the last day that he acted as an appraiser he and Hinrichs went to a saloon and drank together, and that " Mr. Hinrichs said to me — told me that we get through easy with this job — the adjuster has got places to appraise, some in the country, and we will go there, in Newton, and we will go there ; I answered, I will see how the time will be with me ; if I can spare it, that is all." Hinrichs denied that he made any such statement to Levy. The plaintiff testified that the fact that this conversation had occurred was brought to his knowledge, and that thereupon and for that reason, and because he was dissatisfied with the damages agreed upon for the articles appraised, he refused to allow the appraisers to continue. The court instructed the jury that, if they found that such a proposition was made, it was a sufficient justification for the plaintiff to refuse to permit the appraisers to continue the appraisement. That this instruction was proper is apparent, as the plaintiff was under no obligation to permit his damages to be appraised by an appraiser who would make such a proposition or by one who would listen to it without disclosing the fact. The plaintiff testified that after Levy resigned he called on Mr. Meserole, the defendant's assistant manager, and told him that he was ready to appoint another

appraiser.   Meserole testified that the plaintiff called on him and wanted another appraisal, but did not think the plaintiff used the words "that he was ready to appoint a new appraiser."   The jury having found that an improper proposal was made by the defendant's appraiser and new appraisers not having been appointed, the fact that no appraisement was made, pursuant to the requirements of the policy, is not a defense to the action.

In respect to the second defense, it is insisted that the verdict of the jury assessing the damages at $1,000, the plaintiff having sworn in his verified proofs of loss that his damages were $2,154.15, is proof that the plaintiff falsely overestimated the damages to his goods, and that the court erred in not setting aside the verdict on this ground ; that the verdict for $1,000 damages is inconsistent with the verdict that the plaintiff did not falsely overstate in his proofs of loss the damages done to his property.   In support of this contention the defendant cites *Sternfeld* v. *Park Fire Insurance Company* (50 Hun, 262).   In that case the insured, by his verified proofs of loss, stated his damages to be $23,342.47.   The appraisers appraised the damages at $4,321.53, making an overestimate of $19,020.94.   The jury, by their verdict, found that the damage to the property was $5,000, making an overestimate by the plaintiff of $18,342.47.   In discussing the case the court . said that there was no evidence that "tended to explain this difference on the ground of any mistake or misapprehension concerning either of the facts upon which the proofs were made and verified, and as there was no ground from which it could be inferred that the loss had been overstated in this manner by mistake, there was reason for assuming that it had been fraudulently made to defraud the insurance company out of the other half of the amount of the policy.   Such an inference necessarily follows from so great a difference."   The amount of the loss sustained was found to be less than one-fourth of the amount claimed.   In that case the judgment and the order denying a motion for a new trial were reversed upon the ground that it was clear, from the verdict of the jury, that the plaintiff had fraudulently overestimated the damages.   In other words, that the verdict that the plaintiff had not falsely overestimated the damage to his property was inconsistent with the finding that the damage did not exceed $5,000.

In *Furlong* v. *Agricultural Ins. Co.* (45 N. Y. St. Repr. 856; 18 N. Y. Supp. 844 · 28 Abb. N. C. 444) the insured, in his verified proofs of loss, swore that the damages caused to his personal property were $1,161.60. The jury assessed the damages on the personal property at less than $80 — less than one-fourteenth of the claim — and it was held that the jury's valuation of the damages at $80 was inconsistent with the finding that the insured had not, in swearing they were $1,161.60, falsely overstated the damages in his proofs of loss, and the judgment and order were reversed.

In *Unger* v. *The People's Fire Ins. Co.* (4 Daly, 96) the insured, in his verified proofs of loss, claimed that the injury to his property amounted to $16,336.23. The case was referred and the referees found that the loss was $9,172.88. It was held, on an appeal from the judgment entered on the report, that the discrepancy between the amount of the claim and the amount awarded by the referees was not proof that the plaintiff had sworn falsely in his proofs of loss.

In *Dolan* v. *Ætna Ins. Co.* (22 Hun, 396) the insured, when the policy was obtained, represented that the building was worth from $3,500 to $4,000, and in his proofs of loss he stated that the injury to his building by the fire amounted to $1,017.64. The appraisers appraised the damages to the building at $694, which was held to be the amount of damages recoverable for its loss. The jury found that there was no fraudulent overvaluation of the damages in the proofs of loss, and the court held that the discrepancy between the amount claimed and the amount awarded did not require the court to hold, as a matter of law, that the plaintiff had fraudulently overstated his damages.

Many cases have arisen over like clauses in fire insurance policies, which are cited in 2 May on Insurance (3d ed. § 477) and 1 Biddle on Insurance (§ 446 *et seq.*). The cases cannot be harmonized, and an analysis of them will serve no useful purpose. The result of a majority of the decisions is that a considerable discrepancy between the amount claimed in proofs of loss and the amount awarded on the trial is evidence of a fraudulent overvaluation, but that it does not ordinarily amount to proof of a fraudulent overvaluation, and that a verdict or finding that the damages sustained by the insured are much less than those claimed in his proofs

of loss is not necessarily inconsistent, and whether the difference between the amount claimed and the amount awarded is so great as to justify the court in setting aside the verdict depends upon the facts of each case.

In the case at bar the property lost and damaged consisted wholly of household furniture, clothing, stores and supplies. The plaintiff asserted in his proofs of loss that the damages caused by the fire amounted to $2,154.15, while the amount awarded by the jury was $1,000. There is no class of property in respect to the value of which persons will so widely differ as articles of household furniture and clothing. Such property always is deemed to be of greater value by its owner than by any other person. · A carpet and articles of furniture possess more value to the owner than to a dealer who estimates their value at what they will sell for as second-hand articles. So in respect to personal clothing. It has little or no market value, though unworn, while it may be worth to its owner substantially what it cost. Considering the nature of the property, we do not think that this court will be justified, as a matter of law, in setting aside the verdict and granting a new trial, because the plaintiff claimed the damages to be a little more than twice the amount awarded. The evidence given on the trial, if believed, justifies the verdict which was returned, and might have justified a larger one, or, if the jury in its discretion had believed the evidence of the defendant's witnesses, who evidently testified to the salable value of the articles as second-hand property, a verdict for a less sum would have been justified. The question of the extent of the plaintiff's damages, and whether the plaintiff falsely overestimated his loss, were fairly submitted to the jury by the learned trial judge; and, while the case may be a close one, we think the verdict should not be overturned as against the weight of evidence.

The hour at which this fire occurred and the circumstances under which it occurred, were such that the jury was entirely justified in finding that it was not fraudulently set or caused by the plaintiff. At the close of the evidence the defendant asked the court to submit eight specific questions to the jury, pursuant to section 1187 of the Code of Civil Procedure. Whether the trial court will or will not submit specific questions to the jury, rests in its sound discretion, and its determination will not be reviewed unless it appear that its

discretion has been abused. It was not proper to ask that eight questions be submitted to the jury in this case, there not being so many issues of fact, and no error was committed in declining to submit the questions proposed. After looking at the exceptions taken to the admission and exclusion of evidence and to those taken to the charge, we find none that seem to be erroneous or so close as to require discussion.

The judgment and order should be affirmed, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment and order affirmed, with costs.