ANIBAL et al. v. INSURANCE CO. OF NORTH AMERICA et al.

(Supreme Court, Appellate Division, Third Department. May 6, 1903.)

**1. INSURANCE—PROOFS OF LOSS—FALSE SWEARING.**
    In an action on a policy providing that it should be void if the insured should be guilty of fraud and intentional and willful false swearing in his proofs of loss, evidence *held* to show that proofs of loss filed were willfully and intentionally false, and that a finding to the contrary was not supported thereby.

Appeal from Trial Term, Fulton County.

Action by Robert P. Anibal and another against the Insurance Company of North America and another. From a judgment in favor of plaintiffs, defendant insurance company appeals. Reversed.

The action is brought upon a policy of fire insurance issued by the defendant insurance company to John McClellan on the 19th day of January, 1901, whereby he was insured for one year against loss by fire to the amount of $800, divided as follows: $500 on building known as the "Little Sprite Hotel"; $125 on furniture therein; $75 on ales, wines, liquors, and cigars therein; $75 on barn; and $25 on carriage house, shed, and icehouse. The hotel and its contents were destroyed by fire on the morning of March 14, 1901. McClellan also held at the time of the fire three other concurrent policies of insurance, issued at the same time by other companies, for $800, each covering the same property in exactly the same proportion as the policy issued by the appellant. The plaintiffs are lawyers, and claim that they have a lien upon or equitable assignment of the policies as security for legal services rendered by them to McClellan. He is a party defendant, and denies their claim, but has not appealed. The defenses inter-

posed by the insurance company are that McClellan was guilty of fraud and intentional and willful false swearing in his proofs of loss, and that the building was burned by his procurement. The plaintiffs had a judgment, and the insurance company has appealed.

Argued before PARKER, P. J., and SMITH, KELLOGG, CHASE, and CHESTER, JJ.

Thomas S. Jones, for appellant.
Andrew J. Nellis, for respondents.

CHESTER, J.   There was sufficient evidence to support a finding that the building was burned by the procurement of the insured, but the learned trial justice did not give credit to that evidence, and found against the contention of the appellant in that respect. The evidence against the conclusion reached, however, is not so preponderating that we should disturb the judgment on that account. But we think the conclusion reached by the trial court with respect to the other defense cannot be sustained. The policy contained a provision that it should be void "in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss," and one requiring him to furnish proofs of loss to the company, signed and sworn to by him, stating the cash value of each item of property and the amount of loss thereon. At the time of the fire McClellan had four policies on the property, amounting, in the aggregate, to $3,200. In his proofs of loss he swore that the property insured was injured or destroyed to the amount of $6,780.30, and that that was its cash value immediately preceding the fire. The court found that the damage by the fire was $1,857. He swore that the value of the hotel was $3,800, and that it was a total loss; the court found the value of the hotel to be $1,200, excluding the foundations. He swore that the barn, carriage house, and sheds were damaged $50; the court found they were damaged only $1. He swore that the value of the ales, wines, liquors, and cigars destroyed was $436.50; the court found their value to be $156. He swore that the value of the hotel barroom and kitchen furniture was $2,493.80; the court found that their value exceeded $500, but fixed the damages upon them only at that sum. These facts of themselves are sufficient to arouse suspicions as to McClellan's honesty in making these proofs. But when we examine some of the other evidence in the case in the light of the circumstances existing at the time of the fire and appearing in the proofs, it cannot be that the great discrepancy between the values placed by him upon the destroyed property and the values shown by the proofs and the findings of the court was the result of an honest mistake of judgment on his part as to such values. The hotel had been built by him in 1895, and he knew what it cost. He and his tenants had kept it as a roadhouse and a house of prostitution. It had depreciated in value because of the use to which it had been put, and because of the failure of a large manufacturing establishment near where it was located. The highest estimate of value placed upon the buildings and lot by any witness, other than McClellan, was $1,500 before the fire and $300 afterwards. The lowest esti-

mate was $800 or $900 before, and $200 after, the fire. It was
shown that the hotel cost about $1,300 when it was built, exclusive of
the paint, the cellar, and a piazza which cost $150, and that it would
cost to rebuild, during the spring and summer after-the fire, about
$1,700. The barn, carriage house, and sheds, which McClellan swore
were damaged $50, were situated some distance from the hotel, and
the only damage to them was that the paint on the shed was roughed
up and blistered some by the heat. The cost to repair this damage
was slight, and was shown to be only from 75 cents to $1. There
was testimony that some of the furnishings of the hotel, of consid-
erable value, included in the proofs of loss, had been removed before
the fire. Among these was a back and front bar and cupboards
valued in the proofs at $250, and for which cheaper ones, worth only
$30 or $40, were substituted. It is very doubtful on the evidence
whether there were any liquors in the place at the time of the fire,
even to the extent found by the court, except a few quarts of whisky
and wine, as no license had been granted for the place, and applicants
for drinks at the bar had been refused the afternoon before the fire.

After the fire, and before the trial, McClellan was sentenced to
Auburn Prison for abduction. He had been a convict before that,
and had served a term of imprisonment. His testimony, taken in
prison, was read on the trial. He was impeached by several wit-
nesses. In his testimony he swore that he did not owe the plaintiffs
anything, and that he never gave them a lien upon the moneys pay-
able under the policy sued upon or under any of the other policies
on his hotel, and that they did not hold these policies by his permis-
sion. The plaintiffs each expressly contradicted him as to these state-
ments, and the court found with the plaintiffs on that issue. This
involved the finding that McClellan had sworn falsely upon the trial
as to a material matter. The purpose of McClellan in denying plain-
tiffs' interest in the policies, and in grossly inflating the values stated
in his proofs of loss, was apparent, and that was to enhance his dam-
ages as nearly as possible to the aggregate of his entire insurance,
so that when the loss was apportioned among the four companies
each would be compelled to pay him practically the entire amount of
their respective policies. Upon the evidence in this case I cannot
resist the conclusion that McClellan was guilty of intentional and
willful false swearing in his proofs of loss, that he so swore for the
purpose of defrauding the company, and that, therefore, the·policy
was by its terms rendered void; and the finding that he duly per-
formed all the conditions of the policy cannot be sustained.

The judgment should be reversed on law and facts, and a new trial
granted, with costs to the appellant to abide the event. All concur,
except KELLOGG, J., not voting.