JOSEPH BASS, Appellant, *v.* THE PHŒNIX INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Respondent.

JOSEPH BASS, Appellant, *v.* THE WILLIAMSBURGH CITY FIRE INSURANCE COMPANY, Respondent.

JOSEPH BASS, Appellant, *v.* THE ROYAL EXCHANGE ASSURANCE COMPANY OF LONDON, Respondent.

First Department, January 22, 1914.

Insurance — action on fire insurance policies — damage to goods — evidence — fraud — discrepancy between plaintiff's statement of loss and amount awarded by appraisers, insufficient to defeat claim for actual loss.

Where, in an action on fire insurance policies to recover for loss to goods arising out of a fire, it appears that the plaintiff immediately after the fire prepared a claim of loss, based upon mere damage to his goods by water and smoke; that about five or six weeks thereafter appraisers appointed by the plaintiff and the defendants assessed the plaintiff's damages, and that the damage from water and smoke may diminish or disappear with lapse of time, a discrepancy between the amount of loss fixed by the plaintiff and the amount awarded by the appraisers should not be taken as proof of fraud or fraudulent intent, so as to defeat the plaintiff's claim for actual loss.

SEPARATE APPEALS by the plaintiff, Joseph Bass, from an order and determination of the Appellate Term of the Supreme Court, entered in the office of the clerk of the county of New York on the 29th day of April, 1913, affirming a judgment of the Municipal Court of the City of New York, borough of Manhattan, fifth district, dismissing the plaintiff's complaint in all three actions.

*Alfred B. Nathan,* for the appellant.

*Max D. Steuer,* for the respondents.

Determination of Appellate Term and judgments of Municipal Court reversed and new trials ordered, with costs to appellant in all courts to abide event, upon the dissenting opinion of BIJUR, J., at Appellate Term. Orders to be settled on notice.

Present — INGRAHAM, P. J., McLAUGHLIN, LAUGHLIN, CLARKE and SCOTT, JJ.

The following is the dissenting opinion delivered at the Appellate Term:

BIJUR, J.:

I dissent.

At the outset plaintiff, appellant, raises an interesting point of practice. As this trial reached a late hour in the evening, it was suggested that if plaintiff would offer no further evidence, but would rest, defendant would move to dismiss the complaint; the court would reserve its decision on that motion, but if it denied the same the defendant would "rest again and rely on a renewal of that motion as though made at the close of the entire case."

The learned trial judge ultimately dismissed the complaint without prejudice. The appellant now contends, citing *Schlesinger* v. *Jud* (61 App. Div. 453), that the court had no right to render its decision in the form adopted. (See *Bowen* v. *Farley,* 113 App. Div. 767.) Appellant claims in substance that as the plaintiff unquestionably made out a *prima facie* case and the determination of the trial judge was based on the establishment of fraud, pleaded as a defense, the court could not dismiss without prejudice to a new action, under section 248 of the Municipal Court Act (Laws of 1902, chap. 580), nor "dismiss on the merits" under subdivision 1 of section 249 of that act, but was authorized only to render "judgment for the defendant." This question, however, need not be determined in view of the conclusion at which I have arrived,

that the judgment in any event should be reversed on the merits.

Plaintiff sued for loss to his goods arising out of a fire, and based his action on sundry insurance policies in small amounts issued by various insurance companies, three of which tried their cases together as one case. The policies are in the New York standard form.

It appears that plaintiff, under the name of J. Bass & Co., had been in the cloak business for many years. On May 12, 1911, a Friday, a fire occurred in lofts below those occupied by the plaintiff, and damaged plaintiff's stock, but only by smoke and water. On the following day, Saturday, plaintiff visited the place and placed his stock on racks and sorted it. On Monday two of the insurance companies' adjusters visited the place, talked with the plaintiff, and all three went around the loft and looked over the damaged articles. Plaintiff immediately prepared a rough inventory and an estimate of the loss he thought he had suffered, and when the adjusters called again on the following Wednesday and Thursday, he showed them this inventory, and they and he went over the stock and compared it with the inventory. Some two weeks later plaintiff, who had hired an adjuster, presented to the companies a sworn proof of loss, which the companies rejected; whereupon an appraiser was appointed by each side, and they selected an umpire, whose services, however, were not required, as the appraisers agreed about six weeks after the fire.

Plaintiff's proof of loss fixes the sound value of his stock at $28,810.65, and his " loss, damage & claim " thereon at $10,770.04; fixes the sound value of fixtures at $4,050, and his " loss, damage & claim " thereon at $869. It may be said at once that the appraisers fixed the sound value of the stock at $26,642.71, or only about seven per cent less than plaintiff's estimate, and the sound value of the fixtures at $2,800, or about thirty per cent less than plaintiff's estimate. The sound value and claim of damage were apportioned by plaintiff in round figures as follows:

Finished garments, sound value, $9,700, damage $6,100, piece goods and unfinished garments, sound value $19,000,

damage $4,600. The appraisers allowed a merely nominal damage of one per cent on the $19,000 of piece goods, and fixed the loss on the $9,700 of finished garments at about $3,200, instead of $6,100 claimed by plaintiff. Plaintiff's claim of $869 on fixtures was reduced to $326.

The learned judge below, in his opinion, points out that the grave discrepancy between the claim of the plaintiff and the amount of the appraisal agreed to by his own appraiser, as well as by the defendants', is convincing evidence of fraud. He says: "I have come to the conclusion on the facts of this case that the gross exaggeration of the plaintiff is not compatible and cannot be reconciled with an honest mistake. There was no evidence of any probative force which attempted to explain this great difference. In addition there are very many suspicious circumstances connected with this case. I have only time now to refer to a few of them. I have in mind the failure to supply the lot numbers; the failure to produce the calculation books; the omission of the original inventory; the failure to produce the stock book; the claim made by the plaintiff upon the trial that his loss was five thousand dollars ($5,000), and the utter lack of evidence in support thereof; the confused testimony regarding the alleged shipment of damaged goods and his failure to show the value of the damaged garments. Now, what impressed the court at the time of the argument to some extent was the fact that the goods were not lost, were not burned. They were still in existence, and I had some doubts as to the motive of the plaintiff's overvaluation of the loss, when anybody could have seen that the damage was slight in one case, and none at all in the other. I mean the finished and piece goods respectively. But I think his very ignorance upon which stress was laid in Mr. Nathan's brief — his very ignorance of the matters relating to insurance, I think is an additional ground for believing that he intended to practice deliberate fraud. It may be that if he had known the various procedures that a claimant has to go through in case of a fire loss, he would not have made these fraudulent representations, but he evidently did not know what would happen. To my mind it appears that he expected that his valuations would not be questioned, or, if they were, that by making this grossly

exaggerated claim he would place himself in a favorable position for a lucrative compromise."

Before considering the serious feature of this case, namely, the great discrepancy between the claim and the allowance, a word must be said in passing concerning the other suspicious circumstances to which the learned judge refers as additional evidence of fraud. The failure to supply the lot numbers, the failure to produce the calculation books, the original inventory and the stock book, were, in part at least, attempted to be explained by plaintiff, and except that his explanation was not very lucid, nothing appears to controvert it. It also appears very clearly that the plaintiff was not very systematic in the conduct of his business, and is himself, to say the least, slow witted. But, whether his explanation in regard to these items be good or not, they relate only to the sound value: practically the original cost plus labor. In respect of such sound value, the plaintiff's figures and those of the appraisers agree to an extent so remarkable as to do credit to the plaintiff's judgment, and to furnish some proof at least of his honesty. The failure, therefore, to produce the books and memoranda in support of the sound value of the goods or of their identity, is utterly immaterial to the issues in the case.

The other item referred to in the court's opinion is the confused testimony regarding the alleged shipment of damaged goods. This, no doubt, refers to the following incident: On one of the visits of the company's adjusters to the premises, plaintiff exhibited a telegram from an out of town customer stating that goods were found by him to have been seriously damaged by smoke. On the trial plaintiff claimed that he had lost the telegram, and on cross-examination it was brought out that the entry in plaintiff's receipt book, wherein the express company's driver receipted for the shipment referred to in this telegram was May eleventh, or the day before the fire. Plaintiff's explanation was "that was a mistake of the boy in the date" (referring to his own office boy). Respondent's counsel comments on this: "It must be borne in mind that this was a receipt from the Adams Express Company." That, however, is an error. It was plaintiff's receipt book and not the express company's receipt book that bore the alleged erroneous date.

It may be that plaintiff's testimony was false, but there is nothing to impugn his statement that it was a mistake of the boy, and I think it but fair, under the peculiar circumstances of the case, to note the statement made at the close of the trial by his counsel: "We have a number of witnesses still to be heard. We have the representative of the Adams Express Company and the shipping-clerk [*i. e.*, the boy] in court, who will testify about the shipment to Clinton, Iowa, and show that it was after the fire." Under all the circumstances of this case, I think that plaintiff is entitled at least to the benefit of the doubt as to this item, and that, in any event, it is an exceedingly precarious support for the general claim of fraudulent proof of loss.

There remains then what was apparently the true deciding factor in the mind of the learned judge below, namely, the grave discrepancy between the amount of plaintiff's claim and the amount awarded by the appraisers. The briefs of the respective counsel are replete with reference to cases in which the proportion of the amount of loss fixed by a jury to the amount of the assured's claim of loss, has been held to be in and of itself sufficient proof of fraud and fraudulent intent to defeat the plaintiff's claim under the terms of the policy. The two most important cases cited are *Sternfeld* v. *Park Fire Ins. Co.* (50 Hun, 263) and *Anibal* v. *Insurance Co. of N. A.* (84 App. Div. 634). It is significant that in both cases the comment of the court is directed to so much of these claims as related to total loss. In the former case plaintiff's claim was that the value of the property actually destroyed was nearly $20,000, and the damage to property not totally destroyed some $3,500. The entire loss was ultimately fixed by the jury at only $5,000. In the *Anibal* case a hotel building and its furnishings were involved. The loss was placed by the plaintiff at some $7,000, and the damage was found to have been less than $2,000. The court said significantly: "The hotel had been built by him in 1895 and he knew what it cost."

The principle which I derive from these and like cases is not that fraudulent intent is to be inferred merely from some particular mathematical formula covering the proportionate relation between the amount of the claim and the amount

actually found to have been lost. It is rather that such a discrepancy may be regarded as proof of fraud in cases where the claimant must be assumed to have had accurate knowledge of the value of the property destroyed. Such inference, however, is not applicable in cases where, for example, the character of the goods such as household furniture prevents an accurate estimate of value. I think, also, that the rule may not properly be invoked in a case like the present, where there was no total or other destruction of goods, but only partial injury of a character testified to as apt to diminish or possibly disappear entirely with the lapse of time and appropriate treatment of the goods. Nor must it be overlooked that plaintiff made no attempt at concealment of his goods or of the character of his loss; but, on the contrary, afforded to the defendants, and they actually availed of, ample opportunity to inspect the goods and form their own estimate of the damage.

On the whole, I think that the claim of loss submitted in this case may by analogy to the rule applied in cases of false representation be regarded rather as the expression of an opinion as to the amount of loss, concerning which men might differ, than as the statement of a fact upon which a third party would reasonably have the right to rely.

In *Claflin* v. *Commonwealth Ins. Co.* (110 U. S. 81) the misstatement related to the method of claimant's payment for the goods lost, and upon this question hung the determination of the amount of his insurable interest. Such misstatement was, of course, that of a fact within the plaintiff's undoubted knowledge. Cases which point out the distinction to which I refer — by analogy, at least — are plentiful. In *Davis* v. *Guardian Assurance Co.* (87 Hun, 417), where household furniture was destroyed, the court said: " Considering the nature of the property, we do not think that this court will be justified, as a matter of law, in setting aside the verdict and granting a new trial, because the plaintiff claimed the damages to be a little more than twice the amount awarded."

In *Simon Cloak & Suit Co.* v. *Ætna Ins. Co.* (N. Y. L. J., Aug. 9, 1912) the trial judge, in refusing to set aside a verdict in favor of plaintiff, after reviewing all the cases, says significantly: " It is also evident from the testimony that the plain-

tiff had no means by which it could positively determine the value of the goods destroyed. * * * It was compelled to estimate its loss * * *. It is quite apparent that its misstatement was based upon an erroneous estimate." Yet in both these cases the misstatement related to the sound value of destroyed goods, concerning which it should be comparatively easy to obtain more accurate data or the exact figures. But in the case at bar it is significant, and to my mind determinative, that the claim of loss was based upon mere damage to goods, and that, too, only by water and smoke. To this must be added several conceded factors, namely, that plaintiff had never suffered from a fire or the effect of a fire before this occasion; had never dealt in anything but his own new specially manufactured goods; that the appraisers' figures were arrived at some five or six weeks after the damage, while plaintiff's had been prepared immediately succeeding the fire; and finally, that, as indicated in the testimony, water and smoke damage may diminish or disappear with lapse of time. I believe that the exaggeration by plaintiff of his loss, under these circumstances, should not be taken as proof of fraud or fraudulent intent, and that it would be unjust to defeat his claim for the actual loss concededly suffered on the mere ground that he had overestimated the amount of this peculiar damage. Moreover, as I have pointed out above, there is not only absence of any proof that he had attempted to conceal any material fact, but, on the contrary, affirmative evidence that he had afforded to the companies, and that they had actually had, ample opportunity to inspect the goods and form their own estimate of the damage.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.