findings in accordance with these views made, and the complaint dismissed, with costs.

INGRAHAM, P. J., and DOWLING, J., concur. McLAUGHLIN and SCOTT, JJ., dissent.

---

(93 Misc. Rep. 8)

### BASS v. WILLIAMSBURGH CITY FIRE INS. CO.  SAME v. ROYAL EXCHANGE ASSURANCE CO. OF LONDON.  SAME v. PHŒNIX INS. CO. OF HARTFORD, CONN.

(Supreme Court, Appellate Term, First Department.  December 31, 1915.)

1. EVIDENCE ☞584—FABRICATED EVIDENCE—WEIGHT.

While, in an action on a fire policy, the fabrication of evidence in support of the claim may be considered as showing its weakness, such evidence is entitled to no great weight.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2424, 2426, 2427; Dec. Dig. ☞584.]

2. INSURANCE ☞665—FIRE INSURANCE—ACTIONS—EVIDENCE.

In an action on fire policies, evidence *held* insufficient to establish the defense of fraud in plaintiff's claim.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1707–1728; Dec. Dig. ☞665.]

3. INSURANCE ☞658—FIRE INSURANCE—ACTIONS.

In an action on fire policies to recover for loss caused by water and smoke, where the company asserted the fraudulence of plaintiff's claim, neither a telegram from a customer complaining that goods shipped him were smoky, nor plaintiff's receipt book showing the date of shipment, etc., were admissible in support of plaintiff's claim.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1689, 1690, 1691; Dec. Dig. ☞658.]

4. WITNESSES ☞275—EXAMINATION—CROSS-EXAMINATION.

Where plaintiff, suing on fire policies for fire and smoke damage, and whose claim was contested as fraudulent, took the stand apparently to give evidence in anticipatory negation of the fraud, he cannot be cross-examined as to his failure to preserve evidence admissible solely on behalf of the defendants to establish their defense.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 924, 926, 967–975; Dec. Dig. ☞275.]

Shearn, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Fifth District.

Actions by Joseph Bass against the Williamsburgh City Fire Insurance Company, against the Royal Exchange Assurance Company of London, and against the Phœnix Insurance Company of Hartford, Conn., which were consolidated. From judgment for defendants, and order denying new trial, plaintiff appeals. Reversed and remanded.

Argued October term, 1915, before BIJUR, PAGE, and SHEARN, JJ.

Morton Stein, of New York City (Alfred B. Nathan, of New York City, of counsel), for appellant.

Max D. Steuer, of New York City, for respondents.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

BIJUR, J. This case comes here on appeal for the second time. At the first trial plaintiff's complaint was dismissed at what was substantially the close of his case. The judgment below was affirmed in this court, but on appeal to the Appellate Division the judgment was unanimously reversed on the dissenting opinion filed in this court. 161 App. Div. 296, 141 N. Y. Supp. 555, 145 N. Y. Supp. 1112.

Plaintiff occupied the ninth loft of a building, and was engaged in the manufacture and sale of cloaks. At 4 o'clock on the morning of May 13, 1911, a fire occurred in the two lofts below his. According to the plaintiff's uncontradicted testimony, he arrived at the building late on the morning of the same day, and found that the stock of goods in the two lofts below his had been totally destroyed, all the windows, front and back, in his loft, were either broken or entirely out, and the elevator doors in the same condition. He testified, further, that his loft was saturated with water and full of smoke, which had discolored the ceiling, and that his stock of goods, though none of it had been destroyed, was badly injured by water and smoke. His claim of loss in substance was that he had sound value, finished garments, $9,700, damage, $6,100; piece goods and unfinished garments, sound value, $19,000, damage, $4,600; fixtures, sound value, $4,050, damage, $869.

As the insurance companies could not agree with him an appraisal was demanded by the companies June 1, 1911. Appraisers were appointed, his own appraiser and the companies' agreeing, without the necessity of reference to an umpire (as provided in the policy), on a total sound value of goods $26,642.71; loss on the finished garments about $3,200, on the piece goods a merely nominal loss of 1 per cent. namely, about $200. The fixtures were valued by the appraisers at only $2,800, and the loss thereon $326. The appraisal was completed June 21, 1911. When the companies refused to pay this award, plaintiff began these suits, which involve only three of the companies out of a large number which have issued policies covering the plaintiff's stock and loss.

[1, 2] On the first trial the complaint was dismissed on the theory that the great disparity between the amount of the claim, i. e., $11,000, and the amount of the award, $3,500, was in itself proof of fraud. Other facts developed on the trial were relied upon as confirming this conclusion. In brief they consisted of the exhibition to one of the companies' adjusters of a telegram from one of the plaintiff's customers in Clinton, Iowa, complaining that some goods shipped by plaintiff were smoky, whereupon the adjuster asked to see the shipping receipt for the goods. When plaintiff's receipt book was produced, it exhibited a receipt alleged to have been signed by an agent of the express company, dated May 12th, the day before the fire. Furthermore, the plaintiff had testified that substantially all his books had been destroyed by him some months after the fire. I do not pretend even to summarize all the facts in the foregoing statement, but merely to indicate their general character.

On the former appeal it was pointed out that under the particular circumstances of this case, where, among other facts, the claim was

only for smoke and water damage, where no question at all was raised as to the sound value of the goods, where there was not only no concealment, but the assured exhibited the goods freely to the companies' representative, the claim of loss could scarcely be regarded as the assertion of a fact or as assumed to be based upon knowledge, but to be rather the expression of an opinion, and that the disparity between the claim and the award was not sufficient to sustain a finding of fraud. The other facts above referred to were examined, and it was pointed out that the incident of the telegram and the date of the receipt for the goods to which it referred, coupled with the explanation of the plaintiff that the date was a mistake of his clerk who made the entry, was an "exceedingly precarious support for the general claim of fraudulent proof of loss."

As to the destruction by plaintiff of his books, it was shown that, as the record stood, they apparently referred only to the sound value of the goods concerning which there was no dispute, and that consequently no material inference could be drawn from their suppression. Further considerations were adverted to, namely, that the assured had undeniably never suffered from a fire before (although he had been in business for some nine years), dealt in nothing but specially manufactured new goods, and was consequently unfamiliar with the effect of a fire upon his stock, that the appraisal was made some five or six weeks after the fire, whereas plaintiff's figures were prepared within two weeks succeeding it, and that smoke and water damage may readily diminish or disappear with the lapse of time. Finally it was pointed out that the companies were defending, not against a claim for damage which they disputed as not having been incurred, but substantially demanded a forfeiture of plaintiff's right to recover even for the amount of loss which it was conceded he had suffered. With this decision as the law of the case, so far as applicable, the present inquiry is largely limited to the effect of the new facts developed upon the second trial.

Coming, then to the testimony adduced on the second trial, there was presented the testimony of the companies' two adjusters and of the two appraisers, the one of the companies and the other the plaintiff's. One of the companies' adjusters, Applegate, and the principal witness on their behalf, is quite positive in his statement that there was no smoke damage and no smoke perceptible when he visited the loft, either on the second or the fourth day after this extensive fire. He conceded that he had not examined more than cursorily the premises where the fire itself occurred, nor inquired as to the kind of goods that had been there kept and destroyed, nor particularly as to the magnitude of the fire. He did testify that the floor at one corner of the plaintiff's loft was "scorched." The evidence given by the other adjuster was in many respects rather frivolous, but nevertheless it may be regarded in the main as fairly corroborative of Applegate's. Both the companies' and the plaintiff's appraisers said on the witness stand that when they examined the goods, even during the fifth and sixth weeks after the fire, there was evidence of smoke damage in some of the fabrics.

156 N.Y.S.—40

In this new record, although it seems manifest that plaintiff exaggerated the extent of his loss, I find nothing, to change the views expressed on the first appeal as to the absence of substantial proof of bad faith in preferring the claim made. There is not even a suggestion of any attempt by the plaintiff to conceal, directly or indirectly, any of his goods, or of any fact immediately or remotely connected with the fire, nor that the defendants did not have equal opportunity for ascertaining the full facts. Of course, it is not claimed that they were not as well, if not better, qualified to judge the extent of the damage as the plaintiff himself. Quite in line with the views expressed on the previous appeal, it is well settled that such a situation leaves no room for the predication of actionable fraud. Shumaker v. Mather, 133 N. Y. 590, 596, 30 N. E. 755; Salisbury v. Howe, 87 N. Y. 128; Long v. Warren, 68 N. Y. 424, 431; White v. London, 90 Hun. 218, 28 N. Y. Supp. 619, 36 N. Y. Supp. 1135.

This brings us to the incident of the telegram. As I understand it, the defendants claim that the telegram was not the genuine expression of the views of the customer of the plaintiff whose signature it bore, and that the proof of its lack of genuineness in that respect is the receipt in the plaintiff's receipt book for the goods referred to in the telegram, which receipt is said to have been signed by the express company's agent, bearing date May 12th, the day before the fire, and that, consequently, the goods themselves could not have been affected by the smoke of the fire, since they were shipped the day before it occurred. Defendants' counsel in his brief says:

"The issue which was litigated at the trial and submitted to the jury was * * * whether the plaintiff had knowingly and fraudulently made a demand upon the insurance companies for a sum larger than that which he knew he was entitled to. * * *"

Testimony of the fabrication of evidence in support of a claim may no doubt be received as some evidence of a consciousness of the weakness of the claim; but, as said by Shaw, C. J., in Commonwealth v. Webster, 5 Cush. (59 Mass.) 295, 317, 52 Am. Dec. 711:

"This consideration is not to be pressed too urgently; because an innocent man, when placed by circumstances in a condition of suspicion and danger may resort to deception in the hope of avoiding the force of such proofs."

There are many expressions in other cases to the same effect. In addition, however, to the slight weight to be accorded to such evidence because of its indirection, which is strongly emphasized in State v. Williams, 27 Vt. 724, Redfield, J., in that case says:

"And if the evidence, in regard to the alleged falsehood or fabrication, be doubtful, it is entitled to no weight. To be entitled to any force, as it is only circumstantial, and collateral to the main issue, its truth should be established beyond all question or cavil."

Tested by this or any other serious standard, I find no reason for changing my previous view that the entire circumstance affords no substantial ground for a finding of fraud. Assuming the telegram to have been fabricated in some way, which defendants' counsel not only failed to prove, but does not even suggest (his witness, Applegate, testifying, indeed, that in appearance it is perfectly genuine); the in-

cident would seem to be of a fairly trivial and negligible character. On the other hand, if we regard it as entitled to some ponderable weight in determining the issue of fraud, there is no proof worthy of the name that it was fabricated.

As to the receipt, plaintiff at the first trial said that the date was a mistake of the boy. On this trial the boy, one Blau, was produced. He was no longer in plaintiff's employ. He testified positively to the entire transaction, recalled that he had started to ship the goods the night before the fire, that it had grown too late to deliver them to the expressman, that he had therefore returned them to the packer, that they were packed the next morning and shipped to Towler & Spreeter at Clinton, Iowa; that he had prepared the receipt on the evening before, anticipating the goods to be then called for, and had not changed the date. He produced the shipping book kept by him, in which appeared the appropriate item under the date of the 13th in its regular order of entry. Moreover, from a technical point of view, it must not be overlooked that, while the written date on the receipt may have cast some doubt on the telegram, the apparent physical genuineness of the telegram itself supports the plaintiff's and his clerk's explanation of the receipt. I should perhaps mention, if only to express surprise at its introduction, the testimony given by an employé of Adams Express Company, who was called to the stand by the plaintiff. There is no need to comment upon the confused character of the testimony of this witness, although I think that the defendants are fairly justified in claiming that it may be interpreted to the effect that the witness had been unable to find a corresponding entry among the records of his employer of the shipment of these goods. But it becomes quite unnecessary to determine whether evidence of this character can be seriously considered, in view of the uncontradicted evidence of the plaintiff's clerk that the express company to which the package was delivered was either the American or Wells Fargo.

Finally, we have to consider the destruction of his general books of account and records by plaintiff, as he testifies, during a period running from August to October, 1911, from three to six months after the fire, and his explanation that, as he had gone into business with other people, his books were of no further value to him, and that, as far as this insurance was concerned, he did not, after receiving the award made in June, think that his books of record had any further bearing on the subject. Defendants' counsel insists that, whatever may have been the fact on the record in the previous trial, the present record shows that these books would bear, not merely on the sound value of the goods destroyed, but on the genuineness of the date of the shipment as of May 12th or 13th. The argument of defendants' counsel to demonstrate the relation of these books to the date of shipment is rather labored, and so far as any inference might be drawn to the effect that entries of this shipment might not have been found therein, defendants can scarcely claim that they were prejudiced by the destruction of the books, because plaintiff testified repeatedly that the goods in question were "job lots" which were not entered in the books. But I cannot regard as serious the claim of defendants' counsel that

these books bore upon the shipment in question, in view of his own questions to plaintiff, after a prolonged examination concerning these books:

"Q. Your story, then, is that you destroyed it" [the calculation book] back in August or September, 1912—*that book that would show just how much those garments would have cost?* A. Destroyed it purposely? I did not. * * * Q. Is that the reason why you did not look for it, because you did not think it necessary? A. Yes, sir. Q. You did not want to show, then, and you did not think it important to show, *what those garments cost?* A. Not after the case was settled."

[**3, 4**] Upon this review of the record of the second trial, I find nothing to suggest that the views expressed on the former appeal are not equally applicable. The question, however, may naturally suggest itself how the jury came to find a verdict for the defendants in a case of this character upon evidence of fraud so weak as to be practically negligible. The answer is readily at hand. For reasons which I must assume to have been sufficient, though they are not apparent, plaintiff's counsel, instead of resting upon proof of the policies and the award, placed his client upon the stand, apparently to give evidence in anticipatory negation of the claim of fraud. Plaintiff was thus subjected to a searching cross-examination on the destruction of his books and the loss of the telegram and the receipt, from which he emerged discomfited and discredited. By this exceptional procedure, although the learned judge below formally charged the jury that the burden of proof on the issue of fraud was upon the defendants, the impression conveyed to the jury upon the trial was to the contrary. Neither the books, nor the telegram, nor the receipt, were a part of plaintiff's case. Indeed, none of them are competent evidence in his favor in any aspect of his contention. Yet defendants' counsel was permitted without objection to read from plaintiff's examination under the policy, held in October, 1912, and to ask him repeatedly whether defendants' counsel had not told him on that occasion:

"Q. Mr. Bass, it is very important *for you* not to lose that receipt and that telegram. Do you remember that? A. Yes, sir."

And much more to the same effect. As I have shown, it was not only not important for plaintiff to have the telegram and the receipt, but they were quite useless to him. Moreover—and this is the irony of the situation thus presented at the trial—the receipt, telegram, and the books (if the latter were of any value to any one) were evidence apparently essential to defendants according to their view of the issue to be presented and proved by them. They made no effort whatsoever to examine, preserve, or perpetuate in any form any of this evidence, and although their witness, Applegate, said that they had made some inquiries in respect to the telegram, presumably of or in reference to the customer at Clinton, Iowa, whose identity was fully disclosed, the result of the inquiry was not made to appear. Instead, in the course of the same cross-examination to which I have adverted, *defendants'* counsel asked the *plaintiff*:

"Well, have you ever had a commission issued to examine [these customers] for the purpose of showing that they got the smoked goods from you? A. No, sir."

In other words, by the fortuitous shape for the defendants which the course of the trial was permitted to take, the defendants' fault in failure to find or preserve testimony necessary for the further presentation of their case (although they were fully apprised of it within four days after the fire, when every opportunity for investigation was open and fresh) was, in the eyes of the jury, visited upon the plaintiff. Furthermore, it need scarcely be pointed out that the exposure of the plaintiff to self-contradiction, inconsistencies, and suspicion, and his general discrediting before the jury, cannot be translated into that affirmative and substantial proof of fraud without which this verdict cannot be sustained.

Judgments reversed, and a new trial ordered, with $30 costs to appellant to abide the event.

PAGE, J., concurs. SHEARN, J., dissents.