Keating, J.
There is an old saying that “ clothes make the man ”. This aphorism must have been coined (to jumble a metaphor) with the plaintiff, here, one Khaibar Khan Goodarzian, in mind.[1] Mr. Goodarzian’s life-style can only be characterized as extravagant and flamboyant. His manner of living is typified by his wardrobe. The different types of clothing and the numbers of each type which Mr. Goodarzian claimed to have possessed is simply staggering.
To accommodate his inventory of clothing, Goodarzian converted a bedroom of his Fifth Avenue apartment into a wardrobe room in which closets lined all four walls; a bathroom was made into a shoe closet. Goodarzian’s extravagance for clothing is amply documented in the record and supports his self-proclaimed title of the “ World’s Best Dressed Man ”. He even went.so far as to monogram his clothing with the initials WBDM, an acrostic made up of the first letters of his title.
Mr. Goodarzian sued the defendant insurance companies for $411,952, the full coverage of the policies issued by the companies, alleging that he had sustained a loss of $985,000 as a result of a fire which occurred in his apartment in the early *164 morning hours of November 4, 1961 while he was entertaining a group of friends at a plush nightclub. Earlier in the evening, he had been a host to an even larger group at his apartment.
Goodarzian claimed that various items of clothing, furniture, fixtures, betterments and improvements, valuable jewelry and Persian rugs were damaged, destroyed, or lost and missing as a consequence of the fire and that the loss to his property amounted to approximately $985,000. The defendants did not dispute the value placed on the property allegedly lost by the plaintiff, but resisted his claim on the ground that items included in the proof of loss, submitted as the basis for recovery under the policies, included many which were not in the apartment on the night of the fire.
The policies issued to Goodarzian insured him against fire for the contents of his apartment to the extent of $341,000 and $57,000 for theft and mysterious disappearance.[2] The insured claimed that there was destruction to “in-sight” property amounting to $92,625, improvements and betterments amounting to $9,437, in debris $750, lost and missing $132,518, jewelry $745,300 and additional living expense $4,500. Goodarzian accordingly claimed the full amount of his insurance coverage to partially compensate him for his loss.
The case was tried without a jury, and the Trial Judge awarded judgment to the plaintiff for $104,316. (The sum embraced $35,645' for clothing, $17,702 for carpeting, $37,482 for damage to furnishings, and $13,487 for destruction of betterments and improvements.) The Trial Judge stated that ‘ ‘ Claims for the other items as lost and missing are not allowed because of failure of proof by the plaintiffs. ’ ’
The Appellate Division (First Department) unanimously reversed and dismissed the plaintiff’s complaint, finding as a matter of law that the proof of loss was fraudulent. We affirm.
The policies sued upon contained the standard provision as required by the Insurance Law that “ This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest *165 of insured therein, or in case of fraud or false swearing relating thereto.” (Insurance Law, § 168.)
This provision is breached if an insured tenders a fraudulent proof of loss as the basis for a recovery under the policy. If the insured fraudulently includes additional items to those actually destroyed by fire in his proof of loss, the policy is vitiated and recovery thereunder is not permitted even though the insured has suffered an actual loss as to part of the included items. The Appellate Division in Domagalski v. Springfield Fire & Mar. Ins. Co. (218 App. Div. 187 [1926]) stated the rule as follows (p. 190): ‘' If it appears that a plaintiff has willfully and fraudulently placed in the proofs of loss a statement of property lost which he did not possess, or has placed a false and fraudulent value upon the articles which he did own, he is not entitled to recover anything. (Clement, Fire Insurance, rule 20, p. 285; 26 C. J. 383; Furlong v. Agricultural Insurance Co., 20 Abb. N. C. 444; Claflin v. Commonwealth Insurance Co., 110 U. S. 81; Sternfeld v. Park, Fire Insurance Co., 50 Hun, 262; Anibal v. Insurance Co. of North America, 84 App. Div. 634.) ” (See, also, Kantor Silk Mills v. Century Ins. Co., 223 App. Div. 387 [1928], affd. without opn. 253 N. Y. 584 [1930].)
The issue presented by this appeal is whether the plaintiff, in attempting to recover for the fire loss, submitted a fraudulent proof of loss, which, as a matter of law, voided the contract of insurance. The determination of this issue rests upon whether the insured presented any credible evidence to support the allegations of his proof of loss that $985,000 worth of items were present in the apartment at the time of the fire.
The fact that plaintiff did not recover for all items claimed does not establish fraud as a matter of law so long as there is some basis to indicate that the claim was made in good faith. When an insured can only prove a small percentage of his claimed loss a presumption arises that the statement of value and quantity set out in his proof of loss is false and fraudulently prepared. This presumption, however, becomes conclusive where it is shown that the difference between the amounts claimed in the proof of loss and those actually proved to have been destroyed are grossly disparate and the explanation tendered is so unreasonable or fantastic that it is inescapable that *166 fraud has occurred. (See Kantor Silk Mills v. Century Ins. Co., supra.)
Although the Appellate Division did not document its finding of fraud and false swearing, the record supports its decision. This can be indicated by an amplification of the testimony in regard to the lost and missing items and the jewelry.
Plaintiff argued here that his inability to demonstrate a greater fire loss than allowed by the trial court resulted from the fact that he did not take an inventory of the damage to the contents of his apartment until 2% months after the fire and, therefore, contends that over $800,000 worth of property was borne away during that period. Even if this assertion could be accepted, as of course it cannot, the plaintiff in no way explains why he included parts of the lost and missing items and the jewelry among the amounts claimed for loss of contents due to fire. A cursory examination of the plaintiff’s proof of loss discloses that included in the $341,000 claimed as fire loss the plaintiff listed jewelry and items later claimed to be only lost or missing. Even if we were to close our eyes to this inflation, and assume that it resulted from a mistaken understanding of the coverage of the policies, this would not refute the insurer’s contention that the jewelry as well as the property listed as lost and missing could not have been destroyed by fire or taken by thieves because they were never present in the apartment.
Among the items in his “ lost and missing ” category, plaintiff included $64,000 of clothing and $50,000 of Persian rugs. The clothing was allegedly in the wardrobe closets of the converted bedroom, and the rugs were stored on the top of one of the closets with a number of hat boxes on top of them. A Deputy Chief Fire Marshall, a Lieutenant in the Fire Department and a Detective of the New York Police Department all testified, in part, that the fire was of suspicious origin and incendiary in nature. They testified that the fire damage was widely separated and limited to parts of a bedroom and the wardrobe room. These rooms, however, were separated by a 10-foot hallway in which there was no fire damage. The fire occurred mostly at floor level and it never reached an intensity so as to severely burn any portion of the rooms. The firemen inspected inside the closets and on top in order to discover latent possibilities for fire, and they testified that the wardrobe closets were sparsely hung with *167 clothes and that there were a large number of wire hangers on the rods, but no clothing and no remains. The firemen, not unlike Mother Hubbard when she looked in the cupboard, found that the shelves were bare.
Most importantly, the tops of the closets were covered with an even layer of ash film, except in those places where hat boxes were placed. This testimony is conclusive as to the fact that the four rugs, which were 9 by 12, were not on the closet roof the night of the fire since the layer of ash film would not have been evenly distributed if the rugs had been there. Conclusive also' is the fact that, after the fire, inspection of ash residue in the apartment did not disclose traces of oriental rugs or large destruction of clothing.
With respect to the jewelry, plaintiff on the night of the fire showed absolutely no concern for the three quarters of a million dollars worth of gems allegedly present in his apartment. The record is devoid of any indication that Goodarzian made any attempt on the night of the fire either to locate or safeguard his king’s ransom in jewelry. He also remarked to a number of people present that he was relieved that his jewelry was in Europe. Such conduct is wholly inconsistent with plaintiff’s claims in his proof of loss. The Appellate Division was, therefore, correct in concluding that, as a matter of law, the insurance policies had been voided by plaintiff’s fraudulent proof of loss.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan and Jasen concur with Judge Keating ; Judge Breitel taking no part.
Order affirmed.

. Plaintiff will be used throughout this opinion to refer to both Mr. Goodarzian, the insured, and his assignees.

. The policies also provided coverage for Additional Living Expenses (20% of the fire coverage).