Joseph GELB, Plaintiff-Appellant,

Joseph Gelb & Company, d/b/a Joseph Gelb, Small Business Advisors, Inc., Joel Management Corp., Whitehill Systems, Inc., Whitehill Brokers Co., and Whitehill Computors Systems, Inc., Plaintiffs,

v.

ROYAL GLOBE INSURANCE COMPANY, Defendant-Appellee.

No. 873, Docket 85–7667.

United States Court of Appeals, Second Circuit.

Argued March 7, 1986.

Decided Aug. 8, 1986.

Joseph Gelb, pro se.

James J. Taylor, New York City (Bingham, Englar, Jones & Houston, New York City, on brief), for defendant-appellee.

Before FEINBERG, Chief Judge, and NEWMAN and WINTER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

Plaintiff Joseph Gelb appeals from a judgment of the District Court for the Eastern District of New York (Mark A. Costantino, Judge) dismissing Gelb's complaint against defendant-appellee Royal Globe Insurance Company ("Royal") and awarding Royal $81,499.98, plus interest, on a counterclaim.[1] Gelb contends that the District Court improperly accorded preclusive effect to his prior criminal conviction for mail fraud. For reasons that follow, we hold that Gelb's criminal conviction precluded his own claim but did not justify entering judgment for Royal on its counterclaim. We therefore affirm the dismissal of Gelb's complaint, reverse the entry of judgment on Royal's counterclaim, and remand for a trial on the counterclaim.

### Background

Gelb owned businesses located at 10–12 Franklin Place in Woodmere, New York. On April 26, 1980, the Franklin Place premises were destroyed by fire. Investigation

---

1. By order of September 25, 1985, this Court dismissed the appeals of the following plaintiffs: Joseph Gelb & Co., Small Business Advisors, Inc., Joel Management Corp., Whitehill Systems, Inc., Whitehill Brokers Co., and Whitehill Computors Systems, Inc.

revealed that the fire was ignited with the aid of gasoline.

Gelb was subsequently indicted and charged with one count of using an "explosive" to destroy commercial premises in violation of 18 U.S.C. § 844(i), one count of using an "explosive" to commit a felony in violation of 18 U.S.C. § 844(h), and eight counts of mail fraud in violation of 18 U.S.C. §§ 1341, 1342. Three of the mail fraud counts were based on Gelb's alleged misrepresentation to Royal that he had not caused the Franklin Place fire. The remaining five mail fraud counts were based on allegedly inflated damage claims that Gelb submitted to Royal. The jury convicted Gelb on all ten counts of the indictment. Gelb moved, pursuant to Fed.R.Crim.P. 33, for a new trial as a result of newly discovered evidence that he claimed established his lack of participation in causing the fire. The District Court denied the motion.

Gelb appealed his criminal conviction to this Court. *See United States v. Gelb,* 700 F.2d 875 (2d Cir.), *cert. denied,* 464 U.S. 853, 104 S.Ct. 167, 78 L.Ed.2d 152 (1983). We reversed the convictions on the two explosives counts on the ground that gasoline was not an "explosive" within the meaning of 18 U.S.C. § 844(h) and (i). With respect to the convictions on the eight mail fraud counts, we made a disposition that has engendered much of the controversy in connection with the pending appeal. Initially, we noted that "we need not decide" whether Gelb was correct in urging that the evidence was insufficient "to prove that he in fact set the Franklin Place fire." *Id.* at 879. We expressed the view that the mail fraud convictions "were sustained by evidence wholly independent from those facts proving the arson." *Id.* We then ruled that the evidence was sufficient to support the jury's finding that Gelb had submitted false proof of loss forms to Royal, grossly inflating the losses claimed. This finding was critical to conviction on five of the mail fraud counts. Finally, we

said we were affirming the conviction on all eight mail fraud counts. Three of those counts, however, rested exclusively on the allegation that Gelb had falsely denied to Royal that he had caused the fire, and we had specifically declined to review the sufficiency of the evidence to prove that allegation. In effect, though we technically affirmed the convictions on the three arson-mail fraud counts, we did not review the issue on which they were appealed.[2] Since the sentences on all counts were concurrent, the anomalous disposition had no effect on Gelb's sentence, *but see United States v. Vargas,* 615 F.2d 952 (2d Cir.1980) (limiting the concurrent sentence doctrine as a basis to avoid appellate review). Nevertheless, the anomaly vitally affects the collateral estoppel issues that we now encounter.

Gelb subsequently commenced this diversity action against Royal to recover on his insurance policy for damage caused to his businesses by the Franklin Place fire. Royal, which had paid $81,499.98 to an innocent owner of a Franklin Place property, alleged that Gelb had caused the Franklin Place fire and counterclaimed for $81,499.48 as subrogee. Royal sought summary judgment dismissing Gelb's claim and granting judgment on its counterclaim. Royal argued that Gelb's criminal conviction collaterally estopped him from denying that he had made fraudulent representations to Royal, which barred Gelb's claim, and that he had caused the Franklin Place fire, which entitled Royal to prevail on its counterclaim. The District Court granted Royal's summary judgment motion in all respects, and this appeal followed.

### Discussion

■ 1. *Choice of Law.* Initially, we must decide whether federal or state law determines the collateral estoppel effect of Gelb's criminal conviction in this diversity action. Our analysis begins with *United States v. Frank,* 494 F.2d 145 (2d Cir.),

---

**2.** We also declined to consider the denial of Gelb's Rule 33 motion by asserting that his newly discovered evidence related only to the issue of who had caused the Franklin Place fire

and that this issue had been removed from the case. *See United States v. Gelb, supra,* 700 F.2d at 880.

*cert. denied,* 419 U.S. 828, 95 S.Ct. 48, 42 L.Ed.2d 52 (1974). In *Frank,* four defendants were convicted under a variety of federal criminal statutes for committing fraudulent acts. The victim, Marie Dominguez, testified for the prosecution. Dominguez had previously commenced a diversity action in federal court against three of the criminal defendants to recover for the same acts that were the subject of the criminal indictment. In the criminal case the defendants requested a jury instruction concerning Dominguez's credibility in light of her pending civil suit. Specifically, they requested a charge that a criminal conviction would operate as collateral estoppel in the civil suit and that Dominguez therefore had a financial interest in the outcome of the criminal case. The trial judge informed the jury of the existence of Dominguez's civil suit but refused to give the requested charge.

On the appeal of the criminal case to this Court, the defendants argued that New York law would govern the preclusive effect of a federal criminal conviction in a civil diversity case and that New York law would accord collateral estoppel effect to the conviction. The Government argued that federal law would apply and would not give collateral estoppel effect to the conviction. The Government relied on *Kern v. Hettinger,* 303 F.2d 333 (2d Cir.1962), on the choice of law issue. In *Kern,* we held that, in accordance with Fed.R.Civ.P. 41(b), a dismissal for lack of prosecution in a federal diversity action would bar a subsequent diversity action on the same claim, even though the state whose law applied to the second diversity action would not consider such a dismissal preclusive.

Writing for this Court in *Frank,* Judge Friendly rejected the Government's contention that federal law would determine the collateral estoppel effect of a federal criminal conviction in a subsequent diversity case. Judge Friendly read *Kern* to require the application of federal preclusion law in a diversity action only where necessary to vindicate the Federal Rules of Civil Procedure. In other circumstances, such as those presented in *Frank,* he suggested

that a federal diversity court should apply New York preclusion law "to reach the same result as would a New York court sitting 'a block away.'" *United States v. Frank, supra,* 494 F.2d at 160 (quoting *Guaranty Trust Co. v. York,* 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed.2d 2079 (1945)). This suggestion implicitly assumed that a New York court would apply New York preclusion law in determining the collateral estoppel effect of a federal conviction. Ultimately, Judge Friendly relegated his discussion to dictum by noting that the choice of law question had no bearing on the outcome. Since both New York and federal law accord collateral estoppel effect to a criminal conviction in a subsequent civil suit, the trial judge had erred, regardless of choice of law, in refusing to charge that Dominguez had an interest in the outcome of the criminal case. This error was deemed harmless, however, and the convictions in *Frank* were affirmed.

In the pending appeal, the choice of law issue requires fuller exploration. Even though New York and federal law both accept the general principle that a criminal conviction has collateral estoppel effect in a civil action, we cannot be certain that the two bodies of law would be congruent in their application of the collateral estoppel doctrine to the unusual circumstances presented by the "affirmance" of Gelb's arson-mail fraud convictions.

Although *Frank* suggests that New York collateral estoppel law would apply to the instant controversy, we have concluded that federal law applies for several reasons. Initially, we agree with Judge Friendly that a federal diversity court and a state court should reach the same result in assessing the preclusive effect of a federal criminal conviction. However, we do not accept the assumption implicitly made in *Frank,* which had no bearing on the outcome, that a state court would apply state law in determining the collateral estoppel effect. A state court must apply federal law to determine the preclusive effect of a prior federal question judgment.

*See Limbach v. Hooven & Allison Co.*, 466 U.S. 353, 361–62, 104 S.Ct. 1837, 1842–43, 80 L.Ed.2d 356 (1984); *Stoll v. Gottlieb*, 305 U.S. 165, 170–71, 59 S.Ct. 134, 136–37, 83 L.Ed. 104 (1938); *Deposit Bank v. Frankfort*, 191 U.S. 499, 517–20, 24 S.Ct. 154, 160–62, 48 L.Ed.2d 276 (1903). It follows as a matter of course that a federal court should apply federal law in such circumstances. *See Seven Elves, Inc. v. Eskenazi*, 704 F.2d 241, 243, n. 2 (5th Cir.1983); *Poe v. John Deere Co.*, 695 F.2d 1103, 1105 (8th Cir.1982); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4472 (1981).[3]

It might be argued that a different result should obtain where the federal question judgment whose preclusive effect is at issue is a criminal conviction. Federal courts might appear to lack a strong interest in fashioning law that determines the collateral use of federal convictions in civil cases arising under state law. However, in *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Supreme Court held that, in a federal civil rights action, a state criminal conviction must receive the same collateral estoppel effect it would receive in the courts of the rendering state. The Court reached this result despite the strong federal interest in providing a federal forum for civil rights plaintiffs. It would be anomalous if federal law did not

---

**3.** Whose law governs the preclusive effect of a federal diversity judgment would be a more difficult question. In an old line of cases that has never been overruled, the Supreme Court has held that the states may apply their own law to determine the preclusive effect of a federal diversity judgment. *See Pittsburgh, Cincinnati, Chicago and St. Louis Railway Co. v. Long Island Loan and Trust Co.*, 172 U.S. 493, 19 S.Ct. 238, 43 L.Ed. 528 (1899); *Metcalf v. Watertown*, 153 U.S. 671, 14 S.Ct. 947, 38 L.Ed. 861 (1894); *Crescent City Live Stock Co. v. Butchers' Union Slaughter-House Co.*, 120 U.S. 141, 7 S.Ct. 472, 30 L.Ed. 614 (1887); *Dupasseur v. Rochereau*, 88 U.S. (21 Wall.) 130, 22 L.Ed. 588 (1875). Federal courts routinely apply state law to determine the preclusive effect of a federal diversity judgment in a subsequent diversity action. *See Iowa Electric Light & Power Co. v. Mobile Aerial Towers, Inc.*, 723 F.2d 50, 52 (8th Cir.1983); *Schneider v. Lockheed Aircraft Corp.*, 658 F.2d 835, 851 n. 17 (D.C.Cir.1981), *cert. denied*, 455 U.S. 994, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982); *Gasbarra v. Park-Ohio Industries, Inc.*, 655 F.2d 119, 122 (7th Cir.1981); *Hayles v. Randall Motor Co.*, 455 F.2d 169, 173 (10th Cir.1971); *Makariw v. Rinard*, 336 F.2d 333, 334 (3d Cir.1964).

However, *Dupasseur v. Rochereau, supra,* and its progeny may have been eroded by two factors. First, the Conformity Act, which required federal courts to apply state procedural rules and upon which the Supreme Court relied in *Dupasseur, supra,* 88 U.S. (21 Wall.) at 135, has been replaced by the Federal Rules of Civil Procedure. State courts will often be required to apply federal law on preclusion questions to vindicate the requirements of the Rules. *See, e.g.,* 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1417 (1971) (Rule 13(a) bars a state claim that should have been asserted as a compulsory counterclaim in a prior federal action). At least as to such questions, federal law must also control where the second action is a federal diversity action. *See Kern v. Hettinger, supra.* It has been suggested that there is no reason to apply federal law on some preclusion questions and state law on others and that federal law always determines the preclusive effect of a federal diversity judgment in a subsequent diversity action. *See Aerojet-General Corp. v. Askew*, 511 F.2d 710 (5th Cir.), *cert. denied*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975); *accord Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499 (11th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 966, 83 L.Ed.2d 970 (1985); *Harrison v. Celotex Corp.*, 583 F.Supp. 1497 (E.D.Tenn.1984); *Fraley v. American Cyanamid Co.*, 570 F.Supp. 497 (D.Colo.1983); *J. Aron & Co. v. Service Transportation Co.*, 515 F.Supp. 428 (D.Md.1981).

Second, the Supreme Court has required the federal courts to give state judgments such collateral estoppel, *see Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), and res judicata, *see Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), effect as would the courts of the rendering state. This rule applies even where the state judgment adjudicates federal questions. *See St. John v. Wisconsin Employment Relations Board*, 340 U.S. 411, 71 S.Ct. 375, 95 L.Ed. 386 (1951); *Rollins v. Dwyer*, 666 F.2d 141 (5th Cir.1982). Thus, a state court's power to declare the victor in a particular controversy includes the power to define the scope of the victory. It would seem that federal courts must possess an equivalent power and that federal law should determine the preclusive effect of a federal judgment, without regard to the basis of jurisdiction. *See Restatement (Second) of Judgments* § 87 (1982); Degnan, *Federalized Res Judicata*, 85 Yale L.J. 741 (1976).

However, since the instant controversy involves the preclusive effect of a prior federal question judgment, we need not decide the choice of law issue relative to a federal diversity judgment.

similarly determine the preclusive effect of a federal criminal judgment in a subsequent state court action or in a subsequent diversity action. *See Wehling v. Columbia Broadcasting System,* 721 F.2d 506 (5th Cir.1983).[4]

Because *Frank* did not consider, and did not need to consider, what law a state court would apply to determine the preclusive effect of a federal criminal conviction, we do not feel obliged to adopt its suggestion that a diversity court should apply state law to such an issue. We also note that the implicit assumption in *Frank* that a state court would apply state preclusion law has been eroded by the Supreme Court's decision in *Allen v. McCurry, supra.* For the reasons given above, we hold that federal law governs the collateral estoppel effect of a federal criminal conviction in a subsequent diversity action. It is especially appropriate to apply federal law in the pending case since the estoppel issue turns on analysis of the unusual circumstances of the disposition of the prior federal appeal, a matter affecting "important procedural interests" of a federal court. *See* 18 C. Wright, *supra,* § 4472 at 741. We therefore proceed to apply federal preclusion law to the instant controversy.

■ 2. *Gelb's Claims.* The Government bears a higher burden of proof in the criminal than in the civil context and consequently may rely on the collateral estoppel effect of a criminal conviction in a subsequent civil case. *See United States v. Podell,* 572 F.2d 31, 35 (2d Cir.1978). Because mutuality of estoppel is no longer an absolute requirement under federal law, *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), a party other than the Government may assert collateral estoppel based on a criminal conviction. *See United States v. Frank, supra,* 494 F.2d at 160. The criminal defendant is barred from relitigating any issue determined adversely to him in the criminal proceeding, provided that he had a full and fair opportunity to litigate the issue, *see Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 481, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 (1982); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, supra,* 402 U.S. at 328–29, 91 S.Ct. at 1442–43.

Applying the foregoing principles to the instant controversy, we note that five counts of the criminal indictment charged Gelb with committing mail fraud by inflating the amount of his losses in statements to Royal. The jury returned convictions on these counts, and this Court reviewed and affirmed the convictions. Since no exceptions to the collateral estoppel rule apply, those convictions establish in this proceed-

---

**4.** The Ninth Circuit has held that state law determines the preclusive effect of a federal criminal conviction in a subsequent diversity action. *See St. Paul Fire & Marine Insurance Co. v. Weiner,* 606 F.2d 864 (9th Cir.1979). This result appears merely to be an application of that Circuit's rule that, in a diversity action, state law determines the preclusive effect of all federal judgments, including federal question judgments. *See Constantini v. Trans World Airlines,* 681 F.2d 1199, 1201 (9th Cir.), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982). For the reasons given in the text, this general rule seems erroneous.

The Seventh Circuit has also looked to state law to determine the collateral estoppel effect of a federal conviction upon a diversity suit. *Nathan v. Tenna Corp.,* 560 F.2d 761, 763 (7th Cir.1977). *Nathan* relied on Fifth Circuit law, *Breeland v. Security Insurance Co.,* 421 F.2d 918 (5th Cir.1969), which the Fifth Circuit no longer

follows. *See Wehling v. Columbia Broadcasting System, supra.* *Nathan* appears to have approached the problem as an application of *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), looking to state law to determine whether the state would choose the collateral estoppel law of the jurisdiction that rendered the judgment of conviction or its own collateral estoppel law. In *Nathan* that *Klaxon* inquiry directed the diversity court back to federal law as the law Illinois would have "chosen." *See also Constantini v. Trans World Airlines, supra.* Since we believe that a state must apply federal law in determining the collateral estoppel effect of a federal criminal judgment, we think the *Klaxon* inquiry need not be undertaken. That approach makes sense only where a state is free to apply its own law in choosing which of alternative bodies of law it will apply to a particular issue.

ing that Gelb misrepresented his losses to Royal. Under New York law,[5] submission of fraudulent proof of loss statements releases an insurer from its obligations under a fire insurance policy. *See* N.Y.Ins.Law § 3404 (McKinney 1985); *Saks & Co. v. Continental Insurance Co.*, 23 N.Y.2d 161, 242 N.E.2d 833, 295 N.Y.S.2d 668 (1968). Therefore, Royal was entitled to judgment as a matter of law under Fed.R. Civ.P. 56, and the District Court properly dismissed Gelb's claim.

■ 3. *Royal's Counterclaim.* Determining the collateral estoppel effect of Gelb's criminal conviction with respect to Royal's counterclaim is more complex. Three of the counts in the criminal indictment alleged that Gelb committed mail fraud by submitting statements to Royal in which he falsely denied that he had caused the Franklin Place fire. The jury found Gelb guilty on these counts, and the District Court's judgment of conviction was based on the verdicts on these counts. A finding that Gelb had in fact caused the Franklin Place fire was essential to support these verdicts. However, in reviewing the judgment, this Court found it unnecessary to determine, and explicitly declined to determine, whether the evidence supported a finding that Gelb had caused the Franklin Place fire, even though our decision stated that convictions on all the mail fraud counts were affirmed. We must therefore determine the collateral estoppel effect of an adverse District Court finding that was explicitly not reviewed but was necessary to a conviction that was said to have been affirmed.

The doctrine of collateral estoppel represents a choice between the competing values of correctness, uniformity, and repose. Reexamination of an issue may well demonstrate that its previous resolution was incorrect, as a result of such factors as better evidence, better advocacy, or better decision-making. There is no general rule of life that an issue once determined may never be reexamined, although such reexamination will not necessarily yield a better result. In any event, judicial efficiency demands that there be an end to litigation at some point. Our system resolves the conflict among values by holding that an issue determined in one proceeding normally may not be reexamined.

This resolution elevates uniformity and repose above correctness. In recognition of this consequence the doctrine of collateral estoppel has limitations to assure that the precluded issue was carefully considered in the first proceeding. For the bar to apply: (1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits. *See generally* 18 C. Wright, *supra*, § 4416.

Appellate review plays a central role in assuring the accuracy of decisions. Thus, although failure to appeal does not prevent preclusion, *see New Haven Inclusion Cases*, 399 U.S. 392, 481, 90 S.Ct. 2054, 2104, 26 L.Ed.2d 691 (1970); *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950); *Angel v. Bullington*, 330 U.S. 183, 189, 67 S.Ct. 657, 660–61, 91 L.Ed.2d 232 (1947), inability to obtain appellate review, or the lack of such review once an appeal is taken, does prevent preclusion. The limitation that a preclusive finding must be necessary to support a judgment is explained at least in part by the difficulty of obtaining appellate review of "unnecessary" findings. For example, a winning party may not appeal issues determined adversely to it by the trial court and, as a consequence, is not barred from relitigating such issues. *See United States v. Cheung Kin Ping*, 555 F.2d 1069, 1076 (2d Cir.1977).

**5.** The parties agree, and we assume, that New York law governs the substantive state law claims advanced by both parties.

In another context, there has been much controversy over whether alternative, independently sufficient grounds are "necessary" to a judgment so that collateral estoppel may be applied. *See* 18 C. Wright, *supra*, § 4421. The general rule in this Circuit is that "if a court decides a case on two grounds, each is a good estoppel." *Irving National Bank v. Law*, 10 F.2d 721, 724 (2d Cir.1926) (L. Hand, J.); *see Ezagui v. Dow Chemical Corp.*, 598 F.2d 727, 732–33 (2d Cir.1979); *Winters v. Lavine*, 574 F.2d 46, 67 (2d Cir.1978); *Williams v. Ward*, 556 F.2d 1143, 1154 (2d Cir.), *cert. dismissed*, 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 323 (1977). The possibility that a losing litigant might not seek appellate review on one of the grounds because the other is clearly decided correctly is thought insufficient to allow relitigation. However, if an appeal is taken and the appellate court affirms on one ground and disregards the other, there is no collateral estoppel as to the unreviewed ground. *See Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1168 (5th Cir.1981); *Stebbins v. Keystone Insurance Co.*, 481 F.2d 501, 507 n. 13 (D.C.Cir.1973); *Martin v. Henley*, 452 F.2d 295, 300 (9th Cir.1971); *International Refugee Organization v. Republic S.S. Corp.*, 189 F.2d 858, 862 (4th Cir.1951); *Moran Towing & Transportation Co. v. Navigazione Libera Triestina, S.A.*, 92 F.2d 37, 40 (2d Cir.), *cert. denied*, 302 U.S. 744, 58 S.Ct. 145, 82 L.Ed.2d 855 (1937).[6]

Since Gelb did not receive effective appellate review of whether he caused the Franklin Place fire, collateral estoppel does not apply to bar relitigation of this issue. Therefore, the District Court's granting of Royal's motion for summary judgment on its counterclaim is reversed, and the case is remanded for a trial on this counterclaim.

**6.** Under the special circumstances of *Halpern v. Schwartz*, 426 F.2d 102 (2d Cir.1970), to which that case has been limited by our subsequent decisions, *see Winters v. Lavine, supra*, 574 F.2d at 67; *Williams v. Ward, supra*, 566 F.2d at 1154, we created an exception to the general rule of *Irving National Bank v. Law, supra*, and held that alternative, independently sufficient grounds were not preclusive. The *Restatement* has adopted this approach as a general rule.

## Conclusion

The judgment of the District Court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

*See Restatement (Second) of Judgments* § 27 comment i (1982). Under this view, the disincentive to seeking appellate review is sufficient to prevent preclusion. However, just as unreviewed findings are not preclusive under our general rule once an appeal is taken, an alternative finding that is in fact reviewed and affirmed is preclusive under the *Restatement. See id.* § 27 comment o.