07-3372-cv
Standard Investment v. Nat'l. Assn. of Security Dealers

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2008

Heard: January 26, 2009                    Decided: March 18, 2009

Docket No. 07-3372-cv

- - - - - - - - - - - - - - - - - - - - - - - - - -
STANDARD INVESTMENT CHARTERED, INC., on
behalf of itself and all others similarly
situated,
          Plaintiff-Appellant,

                    v.

NATIONAL ASSOCIATION OF SECURITIES DEALERS,
INC., a/k/a NASD, NYSE GROUP, INC., MARY L.
SCHAPIRO, RICHARD F. BRUECKNER and BARBARA
Z. SWEENEY,
          Defendants-Appellants.
- - - - - - - - - - - - - - - - - - - - - - - - - -

Before: NEWMAN, SOTOMAYOR, and WESLEY Circuit Judges.

     Appeal from the July 13, 2007, judgment of the United States

District Court for the Southern District of New York (Shirley Wohl

Kram, District Judge), dismissing, for failure to exhaust

administrative remedies, a lawsuit challenging aspects of the merger

of the regulatory functions of the National Association of Securities

Dealers and the New York Stock Exchange, which was approved by the

Securities and Exchange Commission.  The appellant also appeals from

an order denying reconsideration.

Appeal dismissed as moot and case remanded, without adjudication of any substantive issues, because of action taken in the Court of Appeals for the Ninth Circuit dismissing a petition for review of the order of the Securities and Exchange Commission, on consent of parties to the review proceeding.

Jonathan W. Cuneo, Wash., D.C. (William (H. Anderson, Charles Tiefer, R. Brent Walton, Matthew Wiener, Cuneo Gilbert & Laduca, LLP, Wash., D.C.; Richard D. Greenfield, Greenfield & Goodman, LLC, Easton, MD, on the brief), for Plaintiff-Appellant.

Douglas R. Cox, Wash., D.C. (F. Joseph Warin, Jennifer H. Rearden, Howard S. Hogan, Gibson, Dunn & Crutcher LLP, Wash., D.C.; John J. Flood, Financial Industry Regulatory Authority, Inc., Wash., D.C.; Srinivas M. Raju, Seth Barrett Tillman, Richards, Layton & Finger, P.A., Wilmington, DE, on the brief), for Defendants-Appellees Nat'l Assn. of Securities Dealers, Schapiro, Brueckner and Sweeney.

Douglas W. Henkin, New York, N.Y. (Manuel Yanez, Milbank, Tweed, Hadley & McCloy, LLP, on the brief), for Defendant-Appellee NYSE Group, Inc.

JON O. NEWMAN, Circuit Judge.

This appeal arises out of the consolidation of the member regulation operations of the National Association of Securities

Dealers ("NASD") and the New York Stock Exchange Group, Inc. ("NYSE").[1] The appeal presents the unusual situation of a case, dismissed for lack of exhaustion of administrative remedies, in which the appellant, Standard Investment Chartered, Inc. ("Standard") contends that the required exhaustion was concluded before argument of the appeal. The appeal is taken from the May 3, 2007, judgment of the District Court for the Southern District of New York (Shirley Wohl Kram, District Judge). See Standard Investment Chartered, Inc. v. NASD et al., 07 Civ. 2014, 2007 WL 1296712 (S.D.N.Y. May 2, 2007). The appellees are NASD, three of its officers, and NYSE.

The appellant wants us to reverse so that the case may be returned to the District Court. The appellees want us to affirm the dismissal, a result that would also leave the case available for return to the District Court. Under these circumstances, we conclude that the controversy as to the appeal, though not as to the case, has been eliminated, and we therefore dismiss the appeal as moot, without prejudice to the right of any party to pursue any issues sought to be raised on this appeal in the event of a subsequent appeal from a final judgment of the District Court.

Background

---

[1]New York Stock Exchange Group, Inc. is the successor in interest to the New York Stock Exchange.

The parties and their functions. Standard is a California corporation and a member of NASD. NASD is a Delaware corporation, registered with the Securities and Exchange Commission ("SEC") as a national securities association pursuant to the 1938 Maloney Act Amendments to the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78o-3, 78s(a)(1). NYSE is also a Delaware corporation, registered with the SEC as a national securities exchange. See id. § 78f. Both entities are self-regulatory organizations ("SROs") within the meaning of the Exchange Act. See id. § 78c(a)(26). NYSE exercises its regulatory functions through its wholly-owned subsidiary NYSE Regulation, Inc. ("NYSE Regulation"). As SROs, the NASD and NYSE have "a duty to promulgate and enforce rules governing the conduct of [their] members," under the oversight of the SEC. Barbara v. New York Stock Exchange, Inc., 99 F.3d 49, 51 (2d Cir. 1996); see also D'Alessio v. New York Stock Exchange, Inc., 258 F.3d 93, 105 (2d Cir. 2001). This Court has recognized that "the NASD serves as a critical aid to the SEC in implementing and effectuating compliance with the securities laws." DL Capital Group, LLC v. Nasdaq Stock Market, Inc., 409 F.3d 93, 95 (2d Cir. 2005).

The Exchange Act grants the SEC "broad oversight" of SROs' promulgation and enforcement of rules. See id. An SRO's rules are broadly defined as including the organization's constitution, articles of incorporation, bylaws, and rules. See 15 U.S.C. § 78c(a)(27). An

-4-

SRO's proposed rules, and any proposed rule changes, must be filed with the SEC. See id. § 78s(b)(1). With few exceptions not relevant here, an SRO cannot change its rules, including its bylaws, without the SEC's approval. See id.

Under the Exchange Act, the SEC "shall approve a proposed rule change of a self-regulatory organization if it finds that such proposed rule change is consistent with the requirements of [the Exchange Act,] and the rules and regulations thereunder applicable to such organization." 15 U.S.C. § 78s(b)(2). In addition, the Exchange Act authorizes the SEC to "abrogate, add to, and delete from the rules of a self-regulatory organization as the Commission deems necessary or appropriate to conform its rules to requirements of [the Exchange Act] and the rules and regulations thereunder applicable to such organization, or otherwise in furtherance of the purpose of this chapter." Id. § 78s(c).

The consolidation. In November 2006, NASD and NYSE announced a plan to consolidate the member regulation operations of NASD and NYSE Regulation into a combined organization. The regulatory organization created by the consolidation, known as FINRA, would become the sole U.S. private-sector provider of member firm regulation and enforcement. To accommodate the consolidation, NASD's Board of Governors proposed a set of amendments to NASD's bylaws that would modify NASD's governance structure to be compatible with those of the

-5-

NYSE.[2]

NASD called a special meeting of its members to vote on the bylaw amendments, permitting members to vote by proxy. The proxy statement explained that NASD members were being asked to vote only on the bylaw amendments, not the transaction itself. The proxy statement described certain aspects of the proposed transaction in addition to the governance changes. In particular, it explained that NASD anticipated substantial cost savings from the consolidation of regulatory functions and proposed to share these saving with members in two ways. First, upon closing, NASD would make a one-time payment to each NASD member of $35,000. Second, for the next five years, NASD would discount all members' annual dues, subject to annual Board approval. The proxy statement asserted that "[a] larger payment [than $35,000] is not possible" because "NASD is a tax-exempt organization and therefore is limited by tax laws regarding size and source of payments it can make to its members. The special member payment of $35,000 per

---

[2]The bylaw amendments reserved seven seats on the Board of Governors for election by NASD members: three seats to be elected by small firms, three by large firms, and one by mid-sized firms. And a larger number of Board members were to be "public" governors from outside the securities industry. NYSE would not agree to proceed with the consolidation unless these bylaw amendments were approved.

NASD member, or approximately $175 million in the aggregate, will be funded by--and therefore limited by--the expected value of the incremental cash flows that will be produced by the consolidation transaction." In January 2007, the bylaw amendments were approved by a majority of voting members.

The lawsuit. In March 2007, Standard filed the instant lawsuit on behalf of the putative class of NASD members that are not also NYSE members. The complaint alleged that the terms of the proposed consolidation "represent a massively unfair disenfranchisement of NASD members," in both governance and financial terms. The complaint pleaded three claims: the NASD officers breached their fiduciary duties to the proposed class in negotiating the consolidation and failing to disclose all material facts in the Proxy Statement; the defendants engaged in negligent misrepresentation with respect to the proxy statement; and the NYSE and individual defendants would be unjustly enriched by the consolidation.

The defendants-appellees moved to dismiss Standard's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction because of Standard's failure to exhaust administrative remedies or, in the alternative, pursuant to Rule 12(b)(6) because NASD's absolute regulatory immunity barred Standard's claim for damages and because Standard failed to state a claim.

Standard filed an amended complaint in response to the defendant-appellees' first motion to dismiss. The amended complaint emphasized that Standard was not challenging the wisdom of the consolidation, but only the manner of accomplishing it. In addition to the original three claims, the amended complaint alleged a denial of state law rights under Delaware corporate law, conversion, substantial diminution of value in membership, and deprivation of voting membership. Standard sought declaratory relief, an injunction prohibiting the consolidation, an order that the NASD prepare a new proxy statement and hold a new vote, compensatory and punitive damages, and an accounting, among other prayers for relief.

The defendants-appellees again filed a motion to dismiss Standard's claims based on their jurisdictional and immunity defenses. While briefing was underway, Standard sought and obtained expedited discovery from all defendants. Standard obtained communications between NASD and the Internal Revenue Service ("IRS") regarding NASD's tax-exempt status and the special $35,000 member payment.

In May 2007, the District Court granted the defendants-appellees' motion to dismiss Standard's amended complaint on the ground that it failed to establish subject matter jurisdiction under Rule 12(b)(1). Standard Investment, 2007 WL 1296712, at *10. The Court held that because the proposed bylaw amendments necessary for the consolidation's consummation were an exercise of the NASD's rule-

-8-

making authority, Standard was required to exhaust the administrative remedies provided by the Securities Exchange Act and failed to do so. The Court also ruled that Standard's damages claims could not proceed because they were "based entirely on a future contingency--the [c]onsolidation's consummation." Id. at *7. The Court did not reach the defendants-appellees' absolute immunity defense.

Standard then filed a motion for reconsideration of the District Court's ruling. Its motion included two new arguments, first that NASD members were entitled to a "control premium" based on the adoption of the bylaw amendments, and second that under the doctrine of primary jurisdiction the dismissal should be changed to a stay pending SEC proceedings. The District Court denied the plaintiff's motion for reconsideration. Standard Investment Chartered, Inc. v. NASD et al., 07 Civ. 2014, 2007 WL 2049730 (S.D.N.Y. July 13, 2007). The Court stated that the "newly-asserted 'control premium' claim . . . d[id] not affect the Court's exhaustion analysis," and that the request for a stay was untimely raised. Id. at *4.

Standard filed in this Court an appeal of the District Court's judgment and the order denying reconsideration.

SEC proceeding. In March 2007, shortly after Standard filed its original complaint, NASD filed with the SEC a proposed rule change to amend its bylaws. Pursuant to the Exchange Act, the SEC published the proposed bylaw amendments in the Federal Register to solicit comments.

-9-

See 15 U.S.C. § 78s(b)(1). After dismissal of the lawsuit, Standard submitted comments to the SEC, attached the proxy statement, and urged the SEC to request and review the NASD-IRS communications produced in expedited discovery. In response to the comments, the SEC requested that NASD provide additional information about the disclosures regarding the $35,000 payment (but did not request the communications with the IRS). NASD submitted a purported explanation for its statement that "a larger payment [than $35,000] is not possible," including a letter from NASD's general counsel, a letter from expert tax counsel, and a letter from Delaware counsel.

In July 2007, the SEC approved the proposed rule change in a lengthy release, thereby approving the NASD bylaw amendments. See Order Approving Proposed Rule Change To Amend the By-Laws of NASD, Exchange Act Release No. 56145 (July 27, 2007), 72 Fed. Reg. 42,169 (Aug. 1, 2007) ("SEC Release"), available at http://edocket.access.gpo.gov/2007/pdf/E7-14855.pdf. The SEC's release expressly considered Standard's comment that "the focus of the proxy statement was 'the fundamental change in members' voting rights and the $35,000 that each member is to receive in exchange for "surrendering" members' equity valued at as much as $300,000, or more, per NASD member.'" Id. at 42,186 (quoting letter from Benchmark Financial Services, Inc. and Standard ("Benchmark/Standard letter")). The release noted that Standard had alleged "'an inconsistency between

-10-

the statements in the proxy statement and the statements in the NASD Response Letter regarding the $35,000 payment,'" and had also alleged that "'[t]he SEC cannot approve the $35,000 payment without determining whether the statements with respect to the Proxy Statement were truthful and complete.'" Id. (quoting Benchmark/Standard letter).

The SEC stated, however, that it had reviewed Standard's claims only to the extent necessary to make a finding that NASD's proxy approval process was consistent with the Exchange Act's requirement that SROs comply with their bylaws and certificates of incorporation. As the SEC's release explained, the SEC does not ordinarily consider "[w]hether an SRO failed to complete all action required to be taken under its constitution, articles of incorporation, bylaws, rules, or similar instruments . . . at the time it considers whether to approve a proposed rule change." Id. If such a dispute arises, the SEC's general practice is to ask the SRO "to supplement the proposed rule change to address issues raised by commenters." Id. The SEC explained that it had followed this practice with respect to Standard's comment and "requested that NASD provide additional information about the disclosures regarding the $35,000 payment noted in the proxy statement." Id.

After describing all the information provided by NASD about the $35,000 payment, the SEC stated in the following language what it had done with respect to consideration of Standard's state-law claims:

-11-

The Commission ordinarily does not make determinations regarding state law issues but, when required to do so because state law necessarily informs its findings under the Exchange Act, it relies on the conclusions of experts or other authorities. . . . With respect to the adequacy of the proxy statement, the Commission has considered the NASD's explanation regarding the proxy statement's representation about the $35,000 payment. The Commission believes that NASD has made a prima facie showing that these representations were not misleading and that NASD's explanation is uncontradicted by the commenters' submissions regarding this matter. Accordingly, after reviewing the record in this matter, the Commission believes that NASD has provided a sufficient basis on which the Commission can find that, under the Exchange Act, NASD complied with its Certificate of Incorporation and By-Laws with respect to the proxy approval process and that the proposed amendments to its By-Laws were properly approved by NASD members.

Id. at 42,188 (emphases added).

On July 30, 2007, the consolidation of NASD and NYSE was concluded.

The petition to review the SEC order in the Ninth Circuit. Standard filed a petition for review of the SEC's order in the Ninth Circuit, pursuant to 15 U.S.C. § 78y(a), and requested the Court of Appeals to "modify the SEC's order to vacate its state-law finding regarding the proxy statement." Brief of Pet'r Standard at 22, No. 07-73405 (9th Cir. Dec. 3, 2007). Standard argued to the Ninth Circuit that "[t]here is no question that the order can stand without that finding." Id.

The Ninth Circuit never reviewed the SEC's approval order. Before the SEC's responsive brief was due in the Ninth Circuit,

-12-

Standard and the SEC filed a joint motion in which the Commission sought a remand of its order "to allow the Commission to clarify the order by making it clear that the order did not purport to reach a final and binding judgment on whether the NASD proxy statement was deceptive or misleading under state law." Joint Motion of Parties at 6, <u>Standard Investment Chartered, Inc. v. SEC</u>, No. 07-73405 (9th Cir., Jan. 16, 2008) ("Joint Motion").[3]  The joint motion represented that

_____

[3]The joint motion further explained:

The remand would allow the Commission to add language to the order to make it clear: that in the order the Commission did not make a definitive adjudication, such as a trial court would make after an evidentiary hearing, that the proxy statement was not misleading under state law; that the Commission's determination regarding the proxy statement was only for purposes of the Exchange Act; that the Commission did not purport to decide a question of state law, except to the extent state law informed the Commission's determination <u>under the Exchange Act</u>; and that the Commission did not intend that any such state-law determination would be binding on a court in a related action based upon state law.

-13-

"[t]he Commission would also add language to the order stating that, in adding clarifying language, the Commission is not vacating, nullifying or rendering void the NASD–NYSE consolidation and that the consolidation remains in effect as of the original issuance date of the order, i.e., July 26, 2007." Id. at 7.  The Ninth Circuit granted the joint motion in April 2008.

In May 2008, the SEC issued a release amending the SEC approval order.  See Amended Order Approving Proposed Rule Change To Amend the By-Laws of NASD, Exchange Act Release No. 56145A (May 30, 2008), 73 Fed. Reg. 32,377 (June 6, 2008), available at http://edocket.access.gpo.gov/2008/pdf/E8-12631.pdf.  The SEC's release amending the approval order added a new paragraph immediately after the sentence that stated that "the Commission can find that, under the Exchange Act, NASD complied with its Certificate of Incorporation and By-Laws with respect to the proxy approval process and that the proposed amendments to its By-Laws were properly approved by NASD members."  The new paragraph stated:

> This finding as to NASD compliance and members' approval is not a definitive adjudication under state law, such as a trial court would make after an evidentiary hearing, regarding the claim that the proxy statement was misleading. Except to the extent that state law informs the Commission's finding that, as a federal matter under the Exchange Act, NASD complied with its Certificate of Incorporation and By-Laws with respect to the proxy approval process and that

Joint Motion at 6-7 (emphasis in original).

-14-

the proposed amendments to its By-Laws were properly approved by NASD members, the Commission is not purporting to decide a question of state law. The Commission does not intend that its determination regarding the NASD's uncontradicted prima facie showing before the Commission that the proxy statement was not misleading be binding on a court in a claim based on state law.

In June 2008, the Ninth Circuit dismissed Standard's petition.

The parties return to this Court. After the Ninth Circuit's dismissal of Standard's petition, the parties in the pending appeal filed supplemental briefs in this Court. Standard contended that the SEC's amended order confirms that the SEC has no authority to, and did not, consider Standard's state law claims. In response, NASD contended that Standard had abandoned any possibility of exhausting its claims by voluntarily dismissing its petition to review the SEC's order. NYSE contended that Standard had waived the ability to demonstrate that its administrative remedies were inadequate.

## Discussion

Although the procedural developments preceding the argument of this appeal are complicated, the disposition at this point is not. Both parties are in essence seeking from this Court the same relief—a return of the case to the District Court. Standard seeks a reversal of the District Court's judgment and a remand to the District Court. The appellees seek an affirmance of the District Court's judgment, but that disposition would also result in a return of the lawsuit to the District Court. The District Court dismissed for failure to exhaust

-15-

administrative remedies. Although the dismissal was not expressly stated to be "without prejudice," a dismissal for failure to exhaust available administrative remedies should be "without prejudice" as we have previously ruled. See Giano v. Goord, 250 F.3d 146, 150-51 (2d Cir. 2001); Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1999). Other circuits agree.  See, e.g., Rivera-Diaz v. American Airlines, Inc., 229 F.3d 1133 (1st Cir. 2000) (table); Greene v. Meese, 875 F.2d 639, 643 (7th Cir. 1989); Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003).  We will therefore deem the District Court's dismissal to have been "without prejudice."  Such a dismissal leaves the plaintiff free to return to the District Court after exhaustion of administrative remedies.[4]

---

[4]The parties have not briefed the issue of whether return to the District Court after exhaustion of administrative remedies is to be accomplished by refiling the lawsuit or simply by seeking reinstatement. Compare Walker v. Thompson, 288 F.3d 1005, 1009 (7th Cir. 2002) (dismissal for failure to exhaust does not bar "reinstatement"), with Terrell v. Brewer, 935 F.2d 1015, 1019 (9th Cir. 1991) (after dismissal plaintiff was "free to refile his suit"). It is not clear whether these courts meaningfully used the terms "reinstatement" and "refile."  In any event, we leave the issue of the precise procedural route back to the District Court for consideration

-16-

We have not located a precedential decision of any court in which a party whose suit was dismissed for failure to exhaust administrative remedies purported to exhaust those remedies prior to appellate consideration of an appeal from the judgment of dismissal.[5] Considering this apparently novel situation, we note that, even though the parties disagree on the significance of many aspects of the steps taken in this litigation thus far, the ultimate relief they seek from this Court, whether an affirmance or a reversal of the District Court's judgment, would result in a return of this case to the District Court. In that circumstance, we conclude that the essential controversy has been eliminated from the appeal, and the proper course is to dismiss the appeal as moot.

However, unlike the typical situation where the entire controversy between the parties has become moot, there remain

_____

by that Court if the issue should arise.

[5]In a decision of the Sixth Circuit not published in the Federal Reporter, and hence not binding on subsequent panels of that Court, see 6th Cir. R. 206(c), the Court dismissed as moot an appeal from a judgment of dismissal for failure to exhaust administrative remedies because the administrative remedies had been exhausted during the pendency of the appeal. See S.S. v. Eastern Kentucky University, 125 Fed. Appx. 644 (6th Cir. 2005).

substantial disagreements between the parties, and for that reason the dismissal will not be accompanied by a direction to dismiss the case. Cf. United States v. Munsingwear, Inc., 340 U.S. 36, 39 (1950). Among the remaining issues is whether Standard has exhausted its administrative remedies. That dispute pits the appellees' contention that the stipulated dismissal of the petition for review in the Ninth Circuit abandoned and hence failed to complete the exhaustion of administrative remedies against Standard's contention that it successfully challenged the only aspect of the SEC's order that it ultimately wished to challenge, it secured the relief it wanted, and it had no need to ask the Ninth Circuit for any further relief. Also at issue between the parties is the significance of the SEC's amendment to its order approving the bylaw amendments. On that issue Standard contends that the SEC has eliminated any possible obstacle its original order created to Standard's pursuit of its state law claims in the District Court. The appellees respond that the amended order leaves in place some sort of a finding that precludes Standard's state law claims.

None of these matters has been considered by the District Court, which should have the opportunity to deal with them before any substantive review by this Court. Although we intimate no views on the merits of any of these issues (or any other substantive issue between the parties), we suggest to the District Court that it might

-18-

consider inviting the SEC to explain what the Commission meant by its seemingly contradictory assertions that NASD has made "a prima facie showing" that its proxy statement representations were not misleading and that the Commission can "find" that, "under the Exchange Act, NASD complied with its Certificate of Incorporation and By-Laws." The Commission might also be invited to explain the assertions that state law "informs its findings under the Exchange Act" and that its finding as to NASD compliance "is not a definitive adjudication under state law."

In short, we do not decide whether exhaustion was required; if required, whether it has been adequately pursued; or whether Standard has viable state-law claims that may be pursued in the District Court.

We also do not decide whether Standard's damage claims encounter a valid defense of immunity, as asserted by the appellees. The successful assertion of an immunity defense, had the District Court reached that issue, would have resulted in a dismissal of the damage claims with prejudice. However, the judgment dismissing all of Standard's claims for failure to exhaust administrative remedies is deemed to be a dismissal without prejudice. An appellee may not seek to enlarge its rights under a judgment on appeal without taking a cross-appeal. See, e.g., United States v. American Railway Express Co., 265 U.S. 425, 435 (1924); International Ore & Fertilizer Corp. v. SGS Control Services, Inc., 38 F.3d 1279, 1285 (2d Cir. 1994). This

rule applies to preclude an appellate court, in the absence of a cross-appeal, from changing a dismissal without prejudice to a dismissal with prejudice. See, e.g., Alejo v. Heller, 328 F.3d 930, 937 (7th Cir. 2003); Figueroa v. Rivera, 147 F.3d 77, 81 (1st Cir. 1998); New Castle County v. Hartford Accident & Indemnity Co., 933 F.2d 1162, 1205-06 (3d Cir. 1991).

The appellees suggested at oral argument that we should reach their immunity defense even though that issue has not yet been considered by the District Court. They relied on the principle that an appellate court may affirm a judgment on any ground supported by the record. See Barbara v. New York Stock Exchange, Inc., 99 F.3d 49, 57-58 (2d Cir. 1996). They particularly enlist Barbara in their argument because, without a cross-appeal, we there adjudicated and upheld an immunity defense after a suit had been dismissed for failure to exhaust administrative remedies. However, Barbara differs from the pending case in several respects. In Barbara, the panel did not, as we have here, deem the dismissal to have been without prejudice, perhaps because it ruled that the dismissal for failure to exhaust administrative remedies was in error. See id. at 56-58. Furthermore, the District Court had fully (although erroneously) adjudicated the exhaustion issue, whereas here the critical developments concerning exhaustion in the Ninth Circuit occurred after the District Court's decision. We also note that the appellant in Barbara did not alert

the panel to the absence of a cross-appeal. In the pending case, we have deemed the dismissal to have been without prejudice and we think it advisable to have the District Court make the initial determination as to whether exhaustion has now been completed. For all these reasons, we do not reach the immunity defense for lack of a cross-appeal.

## Conclusion

We therefore dismiss the appeal, but not the case, as moot, without prejudice to the right of any party to pursue any issues sought to be raised on this appeal in the event of a subsequent appeal from a final judgment of the District Court.[6]

---

[6]We will not vacate the District Court's decision, a course appropriate in some circumstances where an appeal is dismissed as moot, see Munsingwear, 340 U.S. at 39. As the Supreme Court has instructed, vacatur in the event of an appeal that has become moot is an equitable matter, see U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 29 (1994), and with the substantive issues between the parties unresolved in this Court and available to be reasserted in the event of a subsequent appeal, it would not be appropriate to vacate the District Court's decision. We note, however, that the District Court's decision would not be entitled to preclusive effect in the event of subsequent litigation between the

-21-

parties. <u>See</u> <u>Gelb v. Royal Globe Insurance Co.</u>, 798 F.2d 38, 44 (2d Cir. 1986) ("[A]lthough failure to appeal does not prevent preclusion, inability to obtain appellate review, or lack of such review once an appeal is taken, does prevent preclusion.").